179 N.J. Super. 523 (1981)
432 A.2d 936
THE ESSEX BANK, PLAINTIFF-APPELLANT,
v.
CAPITAL RESOURCES CORP., JOSEPH GIRARD, THEODORE TANASELLI AND GERALD WEIN, DEFENDANTS, AND NICHOLAS G. BOLGER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted June 9, 1981.
Decided June 22, 1981.
*524 Before Judges MATTHEWS, MORTON I. GREENBERG and LOFTUS.
Brach, Eichler, Rosenberg, Silver, Bernstein & Hammer, attorneys for appellant (Alan H. Bernstein on the brief).
Ferrara & Feinsilver, attorneys for respondent (David Feinsilver on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
*525 This appeal raises important questions with respect to a successful litigant attempting to recoup counsel fees through application of R. 4:58, R. 4:22-1 and R. 4:23-2. An understanding of the issues on this appeal requires that the procedural and factual history of this case be set forth at some length.
On or about April 24, 1978 plaintiff bank filed this action in the Superior Court, Chancery Division. The gravamen of its complaint was that defendant Bolger, a former vice-president of the bank, had conspired with the other defendants to have plaintiff acquire "home improvement paper" from defendant Capital Resources Corp., of a nature not acceptable to plaintiff. Plaintiff further alleged that Bolger had acted in the acquisition of these instruments on behalf of plaintiff, had exceeded his authority in so acting, had improperly taken the contracts without recourse against Capital and that as a result plaintiff without recourse against Capital and that as a result plaintiff had suffered and would suffer excessive losses. The action had been generated by the fact that the management of plaintiff had become dissatisfied with the portfolio acquired from Capital. Bolger had been discharged by plaintiff but subsequently obtained employment with Capital. Plaintiff was suspicious of these events. Subsequently, plaintiff filed an amended complaint asserting that Capital was liable to it for $39,016.44 on defaulted loans. This liability was on loans purchased by plaintiff claimed to be with "full rights of recourse."
Bolger filed an answer denying the allegations of the complaint. He also counterclaimed against plaintiff. In the counterclaim he charged that plaintiff, by bringing the action, was liable to him for malicious abuse and malicious use of process, defamation, interference with an advantageous business relationship and intentional infliction of emotional harm. The record presented on this appeal is not complete but it appears that the other defendants also filed pleadings denying the allegations of the complaint.
*526 On July 18, 1978, pursuant to R. 4:22-1, Bolger filed a request that plaintiff file a written answer to the truth of the following statements:
1. That on or about May 28, 1975, Henry Gerberding was the Chief Operating Officer of the Essex Bank and was a member of the Board of Directors.
2. That the alleged "discounting agreement", referred to in paragraph 2 of the Complaint, was prepared by the plaintiff upon the instructions of Henry Gerberding.
3. That said Henry Gerberding, in his capacity as President of the plaintiff and as a member of the Board of Directors of the plaintiff, instructed, directed, authorized and thereafter approved and ratified all complained-of acts performed by the defendant-counter claimant.
4. That the alleged "discounting agreement" was not beyond the authority of Nicholas G. Bolger.
5. That all loans presented for discount to plaintiff by Capitol Resources Corp. were accepted by the plaintiff with the approval, knowledge or ratification of plaintiff's Board of Directors.
6. That all of the subject loans were within the lending area developed by the plaintiff.
7. That none of the subject loans were "commercial paper".
8. That substantially all default conditions alleged in paragraph 6 of the First Count of plaintiff's complaint are the result of negligent, deficient and untimely bookkeeping and collection practices of the plaintiff with respect to the handling of said accounts.
9. That the plaintiff knows of no facts supporting its claim that "the conduct of Nicholas G. Bolger was designed to conspire and defraud plaintiff of the monies received aforesaid by failing to disclose that said loans were assigned without recourse or of the quality and location not acceptable to plaintiff, intending plaintiff to rely that same were acceptable which caused the plaintiff to rely and to be damaged".
10. That defendant-counter claimant Nicholas G. Bolger did not exceed his authority in accepting and discounting the alleged loans.
11. That no alleged conduct of Nicholas G. Bolger was designed to conspire and to defraud plaintiff.
12. That defendant-counter claimant Nicholas G. Bolger disclosed all matters required of him to be disclosed to his appropriate superiors at the plaintiff.
On August 2, 1978 plaintiff replied by denying all the requests except that plaintiff admitted request number one, that on or about May 28, 1975 Henry Gerberding was the chief operating officer of plaintiff and a member of its board of directors.
*527 On July 14, 1978 Bolger, pursuant to R. 4:58-1, served an offer of judgment on plaintiff. In the offer Bolger indicated he would "take judgment in the above-captioned matter in his favor and against the plaintiff, The Essex Bank, dismissing the entirety of the complaint as directed to himself and awarding him costs of suit." Plaintiff never filed a formal acceptance of this offer.
The case was pretried on September 28, 1978. The pretrial order entered on that date provided that Bolger's counterclaim for "malicious prosecution, malicious abuse of process, malicious use of process are dismissed without prejudice." See Penwag Property Co. v. Landau, 76 N.J. 595, 598 (1978). On January 4, 1979 prosecution of Bolger's remaining counterclaims was stayed and they were transferred to the Law Division. In January 1979 Bolger moved for summary judgment in his favor. The trial judge, by order entered February 1, 1979, directed that this motion "be carried until further order of this Court."
During the ensuing year the parties had an opportunity to investigate the matter. In addition, defendant conducted extensive discovery which educated the parties to the facts. On December 18, 1979 plaintiff moved to dismiss the action against Bolger with prejudice. Plaintiff prepared a written statement indicating that the case could not be maintained against Bolger. Plaintiff, however, proposed to proceed against Capital on the instruments purchased from it with recourse. We do not have the transcript of the argument on the motion but the parties are in agreement that the judge reserved decision pending disposition of Bolger's previous motion for summary judgment. Bolger then served another motion for summary judgment. The trial judge, after argument on January 24, 1980, signed an order denying plaintiff's motion to dismiss with prejudice and granting Bolger summary judgment dismissing the complaint "with prejudice, on the merits." Additionally, Bolger was granted *528 leave to file a motion for costs and counsel fees pursuant to his request for admissions and offer of judgment.[1]
Bolger then served a motion seeking costs and counsel fees. There was attached to the motion a certification of Bolger dated March 20, 1980. The certification explained at length Bolger's contention that the action was spurious but yet expensive for him to defend. There was also attached to the motion an affidavit of Bolger's counsel, dated March 21, 1980, reciting that Bolger had incurred $23,837.55 in legal fees and disbursements in defense of the case. Annexed to the affidavit was a schedule showing 253 hours of defense counsel's time on the case. It is impossible from the affidavit to relate any particular time to preparing proofs to overcome any particular denial of a matter Bolger sought to have admitted. The trial judge, after hearing oral argument, allowed Bolger $17,850 in attorney's fees because of plaintiff's failure to admit (see R. 4:23-3), and $750 in attorney's fees because of plaintiff's failure to accept defendant's offer of judgment. See R. 4:58-3.[2] The trial judge thought that there was no merit to the action and that defendant had precisely brought himself within the rules allowing fees. Plaintiff appeals from the subsequent order entered May 2, 1980.
We deal first with the fee allowed because of plaintiff's nonacceptance of defendant's offer of judgment. The applicable rules are as follows:
4:58-1. Time and Manner of Making and Accepting Offer *529 Except in a matrimonial action, any party may, at any time more than 20 days before the first scheduled trial date or daily or weekly call (whichever is earliest), serve upon any adverse party, without prejudice, and file with the clerk of the court, an offer to take judgment in his favor, or as the case may be, to allow judgment to be taken against him, for a sum stated therein or for property or to the effect specified in his offer (including costs). If at any time on or prior to the 10th day before the first scheduled trial date or daily or weekly call (whichever is the earliest) the offer is accepted, the offeree shall serve upon the offeror and file with the clerk a notice of acceptance. The making of a further offer shall constitute a withdrawal of all previous offers made by that party. An offer shall not, however, be deemed withdrawn upon the making of a counter-offer by an adverse party but shall remain open until accepted or withdrawn as is herein provided. If the offer is not accepted on or prior to the 10th day before the first scheduled trial date or daily or weekly call (whichever is earliest) or within 90 days of its service, whichever period first expires, it shall be deemed withdrawn and evidence thereof shall not be admissible except in a proceeding after the trial to fix costs, interest and attorney's fee. The fact that an offer is not accepted does not preclude a further offer within the time herein prescribed in the same or another amount or as specified therein.
4:58-3. Consequences of Non-Acceptance of Offer of Party Not a Claimant If the offer of a party other than the claimant is not accepted and the determination is at least as favorable to the offeror as his offer, he shall be allowed, in addition to costs of suit, a reasonable attorney's fee, not exceeding $750.00, which shall belong to the client and constitute a prior charge upon the judgment. In an action for negligence or other unliquidated damages, however, no attorney's fee shall be allowed to such offeror unless the amount awarded to the claimant is in excess of $750.00 and is less than 80 per cent of the offer.
It is clear that Bolger is not entitled to a fee under R. 4:58-3. Bolger offered to take judgment in his favor. But obviously the rule contemplates that a claimant may offer to take judgment in his favor, not a defendant. This is clear because an offer by a defendant to take judgment in his favor dismissing the complaint with prejudice is certainly not an offer to compromise an action. But an offer by a plaintiff to take judgment in his favor, though seemingly more in the nature of a demand reflecting the fact that plaintiff will prevail in a case, may in fact be a bona fide offer to compromise. This is dependent, of course, upon the claimant's assessment of his case. The purpose of R. 4:58 is to encourage settlement of cases. See Crudup v. Marrero, 57 N.J. 353, 356-357 (1971). Sussna Associates v. Randolph Tp., 122 N.J. Super. 458, 460 (App. Div. 1973). It is highly improbable that an offer by a defendant to take a *530 judgment in his favor dismissing an action will promote settlements.
We further point out that the literal language of R. 4:58-1 was not satisfied by defendant's offer. The rule provides that when judgment is to be taken in favor of the offeror, as here, the offer must be "to take judgment in his favor ... for a sum stated therein...." Certainly, therefore, the rule contemplates that a claimant, not a defendant, will specify the sum to be paid to him. Further, the offer did not specify a sum to be paid Bolger. It simply provided for costs.
The award of a fee to defendant, in addition to frustrating the purpose of R. 4:58-1, would have a broader and more serious consequence. If Bolger may be awarded a fee under R. 4:58-3, then an extraordinary procedural tool to penalize plaintiffs will surely develop. Every defendant, except in negligence actions or cases seeking unliquidated damages, upon being served with a summons and complaint will offer to take judgment in his favor dismissing the complaint with costs.[3] If accepted, the litigation will be over. if the claimant rejects the "offer," then the defendant will, if the claimant received a no cause for action, he entitled to a reasonable attorney's fee not to exceed $750. This is because the determination will be at least as favorable to defendant as his offer. Indeed it will be identical. We do not think that it would be at all fair to plaintiffs to erect such an impediment to their cases.[4]
*531 Defendant served his request for admissions pursuant to R. 4:22-1, which provides in part as follows:
A party may serve upon any other party a written request for the admission for purposes of the pending action only, of the truth of any matters of fact within the scope of R. 4:10-2 set forth in the request, including the genuineness of any documents described in the request. Copies of documents shall be served with the request unless they have been or are otherwise furnished or made available for inspection and copying. The request may, without leave of court, be served upon the plaintiff after commencement of the action and upon any other party with or after service of the summons and complaint upon that party.
The rule provides that unless the party served with the request for admissions responds by serving an answer or objection the matters are deemed admitted. The rule provides for a mechanism to determine the sufficiency of the answer or objection. Here plaintiff did not object to the requests. Rather it specifically answered the requests by denying all of them except that it admitted that Henry Gerberding had been its chief operating officer.
The requests for admissions clearly covered plaintiff's entire case. What plaintiff was asked to admit was that any defaults in the loans were the fault of plaintiff's own bookkeeping and collection practices, that Bolger had acted with authority in acquiring the contracts, that the acquisition of the contracts had been approved by plaintiff and that "no alleged conduct of Nicholas G. Bolger was designed to conspire and to defraud plaintiff." Request nine, which included as a quotation an almost verbatim allegation from the complaint, was particularly far-reaching as it stated:
That the plaintiff knows of no facts supporting its claim that "the conduct of Nicholas G. Bolger was designed to conspire and defraud plaintiff of the monies received aforesaid by failing to disclose that said loans were assigned without recourse or of the quality and location not acceptable to plaintiff, intending plaintiff to rely that same were acceptable which caused the plaintiff to rely and to be damaged".
*532 It is perfectly clear that in large part the requests for admissions were not appropriate. The purpose of a request for admissions is to establish matters to be true for purposes of trial when there is not a real controversy concerning them yet their proof may be difficult or expensive. Van Langen v. Chadwick, 173 N.J. Super. 517, 522 (Law Div. 1980); Hunter v. Erie R.R. Co., 43 N.J. Super. 226, 231 (Law Div. 1956). A request for admissions will thus serve the relatively limited purpose of eliminating the necessity of proving facts which are or should be uncontroverted. Van Langen v. Chadwick, supra at 522.
Examination of the requests in this case shows that Bolger attempted to establish as admitted by plaintiff that plaintiff could prove no basis for relief against him. Thus Bolger went beyond requests to admit underlying facts. If Bolger is entitled to attorney's fees by reason of plaintiff's denial of the requests for admissions, a precedent will be set to permit a prevailing party to obtain attorney's fees in many situations. We see no reason why in a simple tort case a party could not serve a request that the opposing party knew of no facts establishing the other party's responsibility for the accident. Thus, a defendant could request a plaintiff to admit that defendant had operated his vehicle as a reasonably prudent driver would have done and that defendant's conduct was not a proximate cause of plaintiff's injury. If defendant subsequently obtained a verdict for no cause for action, he could then apply for fees against plaintiff under R. 4:23-3. Obviously, a plaintiff could do a similar thing by requesting that defendant admit his negligence. We have no doubt but that if fees were allowed in such situations the practice of serving broadly stated requests for admissions would quickly develop and trial courts would frequently be called upon to determine whether the "party failing to admit had reasonable ground for not making the admission." R. 4:23-3(c).
We do not mean to suggest that requests for admissions are not important to establish underlying facts. For example, in an *533 automobile accident case it would seem that a request that a party admit operation of a vehicle at the time of impact would be entirely appropriate. Indeed, not all of Bolger's requests were improper. Request six, for example, asked that plaintiff admit that "all of the subject loans were within the lending area developed by the plaintiff." While is is possible that plaintiff's lending area might not have been clearly defined, making it impossible for plaintiff to answer the question, nevertheless it is plain that the request dealt with an underlying specific fact and was proper.
Precedent from the federal courts which also have a request for admission rule supports our view that a request for admissions should not be used in an attempt to establish the ultimate fact in issue. in Pickens v. Equitable Life Assur. Society, 413 F. 2d 1390 (5 Cir.1969), the issue in controversy in an action to recover for the death of decedent on an accidental death policy was whether decedent had committed suicide, thereby precluding recovery. Defendant served a request that plaintiff admit that decedent had committed suicide. The court held that by failing to respond, plaintiff had not made the admission because the request dealt with a central fact in issue and was thus beyond the scope of the rule. 413 F.2d at 1393-1394. Similar results were reached in Syracuse Broadcasting Co. v. Newhouse, 271 F.2d 910, 917 (2 Cir.1959), and Demmert v. Demmert, 115 F. Supp. 430, 433 (D. Alaska 1953).
We think that our result is required by R. 4:42-9, which generally provides (with specific exceptions) that no counsel fees shall be awarded in taxed costs or otherwise. The rule was intended to obviate what was perceived to be abuses in the practice before 1948 in the Court of Chancery. See Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 167 (1960). The upholding of attorney's fees under the admissions process here would subvert the purpose of the rule. It would permit applications for fees to be made in any case if the applicant carefully *534 set the stage by serving broad requests for admissions and then prevailed in the litigation. Indeed, it would go beyond even the pre-1948 practice because the rule allowing fees in an appropriate case is applicable in both the Law and Chancery Divisions.
As we have indicated, some of Bolger's requests to admit were proper. But nothing in the record permits us to attribute any portion of the expense for fees to these requests. Further, we doubt that partial admissions would have saved him any defense expenses. We also note that a question could be raised as to whether Bolger would be entitled to fees in any event because he prevailed on summary judgment following plaintiff's admission when it attempted to dismiss its complaint that it had no case against him. R. 4:23-2 allows fees of a party in making proof following the adverse party's failure to admit. Obviously, there are serious questions as to whether Bolger's expenses may be considered costs to establish proofs since there was never a trial. But we do not decide this issue, for we prefer to base our opinion on the broader ground we have stated.[5] Finally, we note that nothing herein should be deemed as reflecting any view that we might have on any pending matter between the parties or any future litigation should it be brought. We simply hold that the awards of fees in this case must be reversed.
The order of May 2, 1980, insofar as it awards counsel fees in the sum of $18,600, is reversed. No costs shall be allowed on this appeal.
NOTES
[1] The record is not clear as to the disposition of the case against the other parties. Further, a portion of Bolger's counterclaim was transferred to the Law Division. The judgment of January 24, 1980, though recited to be final in favor of Bolger, does not strictly comply with R. 4:42-2. Thus, there is a question as to whether the order ultimately, subject to this appeal should be regarded as appealable of right. Nevertheless, we will treat the notice of appeal as an application for leave to appeal, which we grant. See Delbridge v. Jann Holding Co., 164 N.J. Super. 506 (App. Div. 1978).
[2] Additionally, defendant was awarded $4,862.50 costs, but plaintiff does not appeal from this order. We are told that the costs have been paid.
[3] Under R. 4:58-3 a claimant in a negligence action or a case involving unliquidated damages who obtains a no cause for action could not be liable for a fee since his award would not be in excess of $750. Though not argued as applicable by plaintiff, arguably this proviso in itself may have barred the fee award against it. The relief sought by plaintiff against Bolger was reimbursement for loan losses and punitive damages. But we do not decide this point.
[4] We are aware that a defendant, by making a nominal offer to settle, might seek to obtain the advantages of R. 4:58-3 if plaintiff obtains a no cause for action. But we are not concerned with such an offer since it was not made here. We do not decide whether it would result in an attorney's fee being awarded.
[5] Bolger asserts that plaintiff is estopped from challenging the validity of the requests because it did not object to them when they were served. We reject this argument because there is no reason to believe that Bolger, in preparing his case, relied on plaintiff's failure to object or changed his position in any way. See Summer Cottagers' Ass'n v. City of Cape May, 19 N.J. 493, 503-504 (1955).