KAZY DEWALT AND PEARLINE DEWALT, HIS WIFE, PLAIN-
TIFFS–RESPONDENTS, v. DOW CHEMICAL COMPANY, DE-
FENDANT–APPELLANT, AND CHEVRON OIL REFINERY;
CELOTEX CORP., INDIVIDUALLY AND AS SUCCESSOR TO

PHILIP CAREY COMPANY, PHILIP CAREY MANUFACTUR-
ING COMPANY, SMITH & KANZLER, QUEBEC ASBESTOS
MINES, BRIGG MANUFACTURING COMPANY AND PANA-
CON, INC.; ROBERT A. KEASBEY COMPANY; PORTER HAY-
DEN CO. A/K/A H.W. PORTER CO. AND REID HAYDEN;
STATE INSULATION CORP.; MADSEN & HOWELL; OWENS
CORNING FIBERGLAS; EAGLE PICHER INDUSTRIES, INC.;
JOHN DOE CORPORATIONS (A FICTITIOUS NAME REPRE-
SENTING ONE OR MORE CORPORATIONS, COMPANIES,
PARTNERSHIPS OR OTHER BUSINESS ENTITIES OR ORGA-
NIZATIONS, WHOSE IDENTITIES ARE PRESENTLY UN-
KNOWN, ENGAGED IN THE MINING, MILLING, MANUFAC-
TURE, SUPPLY, DISTRIBUTION, INSTALLATION AND/OR
REMOVAL OF ASBESTOS OR ASBESTOS CONTAINING PROD-
UCTS TO WHICH PLAINTIFF WAS EXPOSED); JUDY DOE
CORPORATIONS (A FICTITIOUS NAME REPRESENTING ONE
OR MORE LEGAL ENTITIES WHO STAND IN THE SHOES OF
THE JOHN DOE DEFENDANTS EITHER AS SUCCESSOR IN
INTEREST, ALTER EGO OR BY OTHER EQUITABLE DOC-
TRINE WHICH MAKES THEM RESPONSIBLE FOR THE JOHN
DOE LIABILITY); RICHARD ROE CORPORATIONS (A FICTI-
TIOUS NAME REPRESENTING UNSAFE WORKSITES WHICH
ARE PRESENTLY UNKNOWN AT WHICH THE PLAINTIFF
WAS EMPLOYED), DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued November 9, 1989—Decided December 8, 1989.

56

Before Judges GAULKIN, DREIER and SCALERA.

*Richard J. Shackleton* argued the cause for appellant (*Shackleton, Hazeltine and Bishop,* attorneys, *Richard J. Shackleton,* on the brief).

*Frances A. Tomes* argued the cause for respondents (*Garruto, Galex and Cantor,* attorneys, *Frances A. Tomes,* on the brief).

The opinion of the court was delivered by

SCALERA, J.A.D.

This case requires us to expound again on the principles governing a successful litigant's attempt to recoup counsel fees pursuant to *R.* 4:22 and *R.* 4:23–3.

Plaintiffs, Kazy DeWalt and his wife Pearline DeWalt, instituted suit on May 12, 1987 to recover damages against a series of defendants, contending that Kazy DeWalt had been injured as a result of exposure to asbestos from 1973 through 1981. Kazy DeWalt had been employed by Joule Construction Company during this period of time. It was alleged he had worked at various job sites, including that owned by defendant Dow Chemical Company from 1974 to 1978. Plaintiffs alleged further, that defendants "failed to provide a safe worksite for plaintiff and allowed finished and unfinished asbestos ... to be present ... where plaintiff was employed." Discovery was conducted pursuant to a general order promulgated to govern asbestos litigation during which Dow advised plaintiffs that it

had "never manufactured, sold or distributed asbestos nor asbestos containing products to which plaintiff [Kazy DeWalt] might have been exposed." In their answers to Dow's interrogatories, however, plaintiffs' allegations were consistent with Kazy DeWalt's exposure to asbestos at the Dow worksite.

On January 29, 1988 Dow served Requests for Admission which plaintiffs answered:

1. Kazy DeWalt was never employed by The Dow Chemical Company.
   Admitted.

2. Kazy DeWalt does not have any evidence that he was exposed to asbestos in any product manufactured by The Dow Chemical Company.
   Denied.

3. Kazy DeWalt does not have any evidence that he was exposed to asbestos in any product sold by The Dow Chemical Company.
   Denied.

4. Kazy DeWalt does not have any evidence that he was exposed to asbestos in any product distributed by The Dow Chemical Company.
   Denied.

5. Kazy DeWalt's only contention concerning The Dow Chemical Company is that while employed by Joule Construction Company, he installed insulation at a Dow Chemical Company plant, which insulation contained asbestos.
   Denied.

6. Kazy DeWalt has no evidence that there was any asbestos at any job site owned or controlled by The Dow Chemical Company, where he was working for Joule Construction Company, other than contained in insulation which he was installing pursuant to instructions from his employer.
   Denied.

7. Kazy DeWalt has no evidence that there was any asbestos at any job site owned or controlled by The Dow Chemical Company, where he was working for Joule Construction Company, except in insulation brought to the site by Joule Construction Company.
   Denied.

8. The Dow Chemical Company never supervised Joule Construction Company employees at any Dow Chemical Company job site where they were employed.
   Denied.

Thereafter, Kazy DeWalt was deposed by Dow (although the record does not reflect to what extent any other parties participated therein). During that deposition, Kazy DeWalt admitted that he did not "know of any asbestos at the Dow plants where [he had] worked at all." When Dow's counsel went over some of the precise areas that had been the subject of its requests

for admissions, his testimony clearly indicated that the previous denials thereof were not accurate.

Based on this information Dow demanded from plaintiffs' attorneys "a stipulation of dismissal with prejudice." Instead they offered a stipulation "without prejudice," ostensibly to protect against any future discovery of facts which might inculpate Dow. Frustrated by plaintiffs' refusal, Dow moved for summary judgment and also "for costs ... including reasonable attorneys fees pursuant to the provisions of Rule 4:23–3."

On the return day of the motion plaintiffs' counsel repeated the offer of a dismissal without prejudice, expressing reservations that, under *R.* 4:50, any other disposition might bar a future revival. However, plaintiffs' counsel finally conceded that "there are not any proofs in the case" with which to oppose Dow's motion for summary judgment. Accordingly, that motion was granted.

However, with respect to that portion of the motion seeking costs, plaintiffs' attorney offered the explanation that their original denial of the requests for admission had resulted from counsel's difficulty in understanding Kazy DeWalt, because of his "southern accent" and the fact that he was "on oxygen." Dow's counsel pointed out that it had been put through the expense of taking plaintiffs' deposition and preparing a motion for summary judgment simply because plaintiffs (or their attorneys) had wrongly denied its requests for admissions which would have conclusively confirmed that there was no asbestos at its worksite.

The trial judge undertook to analyze Dow's request in accordance with our expressions in *Essex Bank v. Capital Resources Corp.*, 179 *N.J.Super.* 523 (App.Div.1981), certif. den., 88 *N.J.* 495 (1981). He opined that Dow's "admissions should have been answered" but felt "bound" by what he perceived to be our attitude towards the award of such costs. We cautioned in that case that an application for costs and counsel fees under *R.*

4:23–2 should not be granted where the underlying requests for admissions are misused to the extent that they go "beyond requests to admit underlying facts" [*Id.* 179 *N.J.Super.* at 532] and wrongfully attempt "to establish the ultimate fact in issue." [*Id.* at 533]. We held that the award of costs in such a situation would be counterproductive and tend to "subvert [the] purpose of the rule." *Id.* at 533.

██ *R.* 4:22–1 allows any party to serve requests for admissions on any other party concerning "the truth of any matters of fact within the scope of *R.* 4:10–2." The latter rule is limited to matters which are "relevant to the subject matter" of the pending suit. Under *R.* 4:22–1 the party upon whom requests are served is entitled to have the court pass on the propriety thereof. However, upon failing to do so, it is incumbent upon that party to supply a truthful response or to clearly explain why the requests cannot be so admitted or denied. The demanding party may also move to have the court determine if the answering party has answered in accordance with the rule. The sanctions provided in *R.* 4:23–1(c) are specifically made applicable to any such motion.

Additionally, *R.* 4:23–3 specifically governs the situation where a party fails to properly admit or deny any proper requests,

> If a party fails to admit the genuineness of any document or the truth of any matter as requested under *R.* 4:22, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that
>
> (a) The request was held objectionable pursuant to *R.* 4:22–1, or
>
> (b) The admission sought was of no substantial importance, or
>
> (c) The party failing to admit had reasonable ground for not making the admission.

The whole scheme of our Civil Practice Rules is calculated to promote probity in litigation practice. *Cf. e.g. Pressler, Current N.J. Court Rules, Comment, R.* 1:2–4, *R.* 4:22 and *R.* 4:23. This is consistent with the position of our Supreme Court that

"each litigant should bear his own expenses in prosecuting and defending his individual interest." *Sunset Beach Amusement Corp. v. Belk,* 33 *N.J.* 162, 167 (1960). To that end, the Court has said repeatedly that legal expenses are not ordinarily recoverable by a successful party unless expressly allowed by statute, court rule or contract. *State, Dept. of Environ. Protect. v. Ventron Corp.,* 94 *N.J.* 473, 504 (1983). However, *R.* 4:23–3 expressly does allow the recovery of such costs in prescribed situations.

The various money sanctions provided by our rules constitute a recognition that litigation is difficult and expensive enough without having to suffer a party's obstinate and unreasonable refusal to admit facts which are undisputed. See the discussion in *Itel Containers Intern. v. Puerto Rico Marine Mgt.,* 108 *F.R.D.* 96 (D.C.N.J.1985), involving federal rules in this area. Such lack of candor is inimical to the principle that litigation should proceed in the absence of surprise and a lack of concealment. *Androvich v. Lassach,* 156 *N.J.Super.* 499, 504 (App. Div.1978).

> Our court system has long been committed to the view that essential justice is better achieved when there has been full disclosure so that the parties are conversant with all the available facts. *Jenkins v. Rainner,* 69 *N.J.* 50, 56 (1976).

Thus, the parties to litigation and their attorneys (R.P.C. 3.2 and 3.4(a)) should stand ready to admit the truth of important relevant matters where there is no real controversy concerning them. This will obviate the necessity of having to secure costly proofs to counteract any wrongful denial thereof. *Essex Bank,* 179 *N.J.Super.* at 532. In order to promote that goal, when asked, the courts should assume the task of monitoring against such stonewalling tactics and should not hesitate to take appropriate steps to enter appropriate orders or to impose sanctions where the facts warrant.

Therefore, it will be expected that litigants will proceed conscientiously and in good faith to admit undisputed facts. In that way we will achieve

... a just determination, simplicity in procedure, fairness in administration and elimination of unjustifiable expense and delay. [*R.* 1:1–2].

If any party (or attorney) fails to do so, the offended party may ask a court to consider whether such behavior calls for the assessment of costs incurred to overcome that failure. *R.* 4:23–3. However, we again remind the bench and bar that requests for admissions under *R.* 4:22 must be directed to matters that are relevant, factual, not privileged and deal with central controverted issues in the case. *Cf.* also *R.* 4:42–8 and *R.* 4:42–9. *Van Langen v. Chadwick,* 173 *N.J.Super.* 517 (Law Div.1980). In that regard, the court must consider whether such expenses were caused by a basically objectionable request, or one that was not of any substantial importance to the issues in the case or that the offending party otherwise "had [a] reasonable ground" for not admitting it. *R.* 4:23–3.

In the *Essex Bank* case we explained that such an inquiry requires a careful examination lest the sanction provision be misused.

[The rules] permit applications for fees to be made in any case if the applicant carefully set the stage.... [*Essex Bank,* 179 *N.J.Super.* at 533–534.] *See also* 4A *Moore's Federal Practice,* § 37.04 concerning the comparable federal rules and the cases cited therein.

Further, notwithstanding the reservations expressed in *Essex Bank,* upon reflection, we see no reason why such expenses should be recoverable only if they are incurred as a result of a trial. *Cf. Ibid.* at 534. Indeed, *R.* 4:23–3 does not limit such award in that manner. Moreover, we can conceive of many situations where substantial expenses may be reasonably incurred through discovery or investigation in order to gather proof of facts which have been improperly denied and which eventually lead to a disposition by a motion, such as occurred here. Thus, we hold that the imposition of such costs are not limited to expenses incurred for proofs established at trial.

Turning our attention to this case, a remand is required for several reasons. If the trial judge finds that Dow had served proper and substantially important requests pursuant to

*R.* 4:22, and that plaintiffs had no reasonable ground for failing to admit them, he should award the requested costs to Dow but only to the extent that they reasonably resulted because of such actions. While the trial judge generally observed that Dow's admissions "should have been answered," he only suggested, without deciding, that plaintiffs may have had some justification for not doing so in light of the prevailing general discovery order in asbestos cases, and because of the asserted difficulty of counsel in understanding Kazy DeWalt. In other words, the careful examination and factual analysis required by *R.* 4:23-3 was not accomplished. 4A *Moore's Federal Practice, supra.* Further, on remand, it may well be that additional evidence may be necessary in order to properly resolve all of the relevant issues.

Thus, we vacate the order denying costs and remand the matter for further proceedings in accordance with this opinion.