630 A.2d 415

MICHAEL DELCAMPO, PLAINTIFF, v. NEW JERSEY
AUTOMOBILE FULL INSURANCE UNDERWRITING
ASSOCIATION, DEFENDANT.

Superior Court of New Jersey
Law Division Essex County

Decided January 15, 1993.

688

*Thomas D. Flinn,* for plaintiff (*Garrity, Graham, Hawkins;* and *Favetta, Elizabeth Vinciguerra,* on the brief).

*Victoria L. Tomasella,* for defendants (*Breslin and Trovini, Ms. Tomasella* on the brief).

## OPINION

SCHWARTZ, J.S.C.

This is an action in which plaintiff seeks a declaration of coverage under a policy of automobile insurance issued on behalf of defendant, New Jersey Automobile Full Insurance Underwriting Association ("JUA"), by defendant Electronic Data Systems ("EDS") as servicing carrier, for an accident occurring on October 5, 1990, while plaintiff was operating a 1986 Pontiac Fiero on the Garden State Parkway. Plaintiff seeks recovery of PIP benefits, collision benefits for damage to his Pontiac and indemnity for moneys paid by him to the New Jersey Highway Authority for damage to its property caused by the accident. Defendant denies that it is under any liability to plaintiff and asserts that it does not

afford coverage for the October 5, 1990, accident because it sent plaintiff a notice of cancellation on September 6, 1990, which canceled the policy effective September 29, 1990, approximately six days before the accident.

Plaintiff has filed a motion for partial summary judgment on the issue of liability based in part upon the failure of defendant to respond to plaintiff's requests for admission for approximately nine months. The requests were served on January 29, 1992, and defendant JUA did not reply to them until September 29, 1992, about four weeks after plaintiff's motion was filed. One of the requests (request number 2) asked defendant to admit that the policy was in effect on October 5, 1990. Although that request was denied by defendant when it responded to the requests on September 29, 1992, plaintiff seeks to have the request be deemed admitted pursuant to *R.* 4:22–1 because defendant did not respond within thirty days and did not obtain an extension of time within which to respond.

Defendant has filed a cross-motion for summary judgment, seeking dismissal of the action upon the ground that it allegedly complied with insurance laws and effectively canceled the policy in question on September 29, 1990. Defendant also seeks leave to file its reply to plaintiff's requests to admit out of time.

Under *R.* 4:22–1 and *R.* 1:3–4 the court has the power to extend the time in which a party must answer requests for admission, and "that power should be exercised where the interests of justice require." *Hungerford v. Greate Bay Casino Corp.,* 213 *N.J.Super.* 398, 403, 517 *A.*2d 498 (App.Div.1986); *Klimowich v. Klimowich,* 86 *N.J.Super.* 449, 453, 207 *A.*2d 200 (App.Div.1965). The court, in the interests of justice, may either extend the time of a party to respond, or may provide appropriate relief "by relaxing the rule in such manner as may appeal to the discretion of the trial court." *Ibid.* See also *R.* 1:1–2, which allows the court to relax any rule if adherence to it would result in an injustice.

The purpose of requests for admission has been held to be limited to establishing for purposes of trial underlying facts for which there is no real controversy but for which proof may be difficult or expensive. *Essex Bank v. Capital Resources Corp.,* 179 *N.J.Super.* 523, 532, 432 *A.*2d 936 (App.Div.), *certif. den.* 88 *N.J.* 495, 443 *A.*2d 710 (1981). However, "a request for admissions should not be used in an attempt to establish the ultimate fact in issue." *Id.,* 179 *N.J.Super.* at 533, 432 *A.*2d 936.

Moreover, under *R.* 4:22–2 the trial court is empowered to permit a "withdrawal or amendment of the admission," and the court may exercise its discretion to permit such withdrawal or amendment "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." Our appellate courts have interpreted this rule as recognizing the subservience of requests for admission to consideration of the merits and as requiring a showing of prejudice by the party resisting the motion to permit withdrawal or amendment of the admission. *Gilborges v. Wallace,* 153 *N.J.Super.* 121, 130–31, 379 *A.*2d 269 (App.Div.1977), *aff'd on this issue,* 78 *N.J.* 342, 348, 396 *A.*2d 338 (1978).

■ Applying these principles, the court is convinced that defendant JUA should not be deemed to have admitted plaintiff's request to admit number 2. While the certification of Victoria Tomasella dated October 16, 1992, attempts to excuse the delay, that certification merely demonstrates that the failure of counsel for the JUA to respond in a timely manner resulted from oversight by counsel. Tomasella explains that another attorney, formerly associated with her firm who had responsibility for this file when the requests to admit was served on January 29, 1992, waited twenty-eight days before forwarding the requests to the client. The requests were then forwarded to "HMC" as servicing carrier for the JUA. During oral argument of this motion Tomasella advised the court that EDS was the servicing carrier for the

JUA on the dates when the policy was underwritten, the cancellation notices were issued and when plaintiff's accident occurred. Thereafter EDS withdrew or was discharged as a servicing carrier for the JUA and all EDS files were turned over to HMC. The file was assigned to Tomasella in June 1992, and in early July 1992 she contacted HCM to complete discovery. Tomasella's certification does not state whether the requests to admit were discussed at that time or why it should have taken so long to respond since the requests did not seem complicated and certainly counsel should have known that her client would deny request number 2 since the JUA was asserting a cancellation defense.

Nothing was done by counsel for the JUA prior to the filing of the present motion by plaintiff to obtain an extension of time to answer the requests, either by consent of counsel or by motion with the court. Because the EDS underwriters had the file in this matter and were the only ones with personal knowledge of the issuance of the cancellation notice, the JUA renamed EDS on September 14, 1992, to act as servicing carrier on this matter. Approximately two weeks later, counsel for defendant JUA served its reply to plaintiff's request to admit.

Notwithstanding this inexcusable delay in responding to plaintiff's request to admit, counsel for plaintiff conceded during the oral argument of this motion that he had no information to indicate that anyone in his office made any phone calls or wrote any letters to defendant's counsel concerning the failure of the JUA to reply to the requests to admit. However, it is clear that plaintiff has been aware since November 1990 that defendant's primary, if not sole defense on liability was its cancellation defense, and there is no dispute that plaintiff received a notice of cancellation in a timely fashion. Accordingly, the interests of justice require that the rules be relaxed to allow defendant's response to plaintiff's requests to admit to be deemed filed in a timely fashion. In addition, the request in question is improper since it seeks an admission as to the "ultimate fact in issue." *Essex Bank v. Capital Resources Corp., supra.* Therefore, any

admission which may otherwise have arisen under *R.* 4:22–1 by reason of defendant's failure to respond within thirty days is held not to be binding upon defendant, and defendant is granted leave to withdraw such admission under *R.* 4:22–2. Plaintiff has failed to demonstrate any prejudice to him from the withdrawal of that admission. Accordingly, to the extent that plaintiff's motion for partial summary judgment as to liability relies upon the JUA's failure to respond to his request for admission number 2, the motion will be denied.

With respect to the merits of plaintiff's motion and defendant's cross-motion, the papers do establish that plaintiff, by his own admission, received defendant's notice of cancellation in a timely fashion. Roberta McWilliams, an underwriter for EDS, has certified that EDS complied with the provisions of *N.J.S.A.* 17:29C–10 and has attached to her certification a copy of a certificate of mailing (Exhibit G) and a copy of the notice of cancellation and a certification by Carmella Riley executed on the date of mailing of September 6, 1990, stating that the copy of cancellation notices labeled from number WP5N–1 to and including number WP5N–300 are true copies of the mailed cancellation notices (Exhibit F). There is no indication that the cancellation notice sent to plaintiff had one of those numbers so as to verify that the certification accompanying the cancellation notices mailed by EDS on September 6, 1990, complied with the aforesaid statute as interpreted by the court in *Celino v. General Acc. Ins. Co.,* 211 *N.J.Super.* 538, 543, 512 *A.2d* 496 (App.Div.1986). Moreover, McWilliams's certification does not establish either that the purported "certificate of mailing" attached as an exhibit to her certification is an approved United States Postal Service form of certificate of mailing and indeed Exhibit G fails to conform to the form specified in *Hodges v. Pennsylvania National Insurance Co.,* 260 *N.J.Super.* 217, 615 *A.2d* 1259 (App.Div.1992). In addition, the McWilliams certification does not establish that the amount of postage on the purported "certificate of mailing" is the correct amount of postage for the number of cancellation notices

mailed by EDS from the Mount Laurel, New Jersey, post office on September 6, 1990.  Under *Hodges* these deficiencies in proof would mandate denial of the JUA's cross-motion for summary judgment were it not for plaintiff's admission that he received the cancellation notice prior to the effective date of cancellation of September 29, 1990.  However, in view of that admission by plaintiff, he was not prejudiced by any failure by EDS to strictly comply with the requirements of *N.J.S.A.* 17:29C–10.  *Lilly v. Allstate Ins. Co.*, 218 *N.J.Super.* 313, 325, 527 *A.2d* 903 (App.Div. 1987).

■ Plaintiff argues, however, that the notice of cancellation was invalid and unenforceable because the reason given for cancellation, namely, plaintiff's failure to supply evidence of registration in New Jersey of the 1986 Pontiac Fiero prior to the effective date of cancellation, is not one of the grounds for cancellation authorized by *N.J.S.A.* 17:29C–7(A).  Plaintiff further argues that JUA carriers are bound by that statute because the legislation which creates the JUA, and in particular *N.J.S.A.* 17:30E–6, authorizes the Commissioner of Insurance to adopt a "Plan of Operation", which among other things is to provide "minimum requirements for the selection and performance of servicing carriers," and contains the following exception: "except that nothing herein shall be interpreted to affect the provisions of P.L.1968, C. 158 (C. 17:29C–6 *et seq.* )."  *N.J.S.A.* 17:30E–6(a).

The affidavits of plaintiff Michael DelCampo and his mother, Rosalie Day, establish that plaintiff initially obtained insurance for a 1977 Ford Thunderbird through the JUA effective May 22, 1990.  (Exhibit 2 to plaintiff's third affidavit).  The policy declaration for the 1986 Pontiac Fiero was issued effective August 8, 1990.  (Exhibit D to plaintiff's initial moving papers).  The first affidavit of Day establishes that the Thunderbird was sold for scrap in July 1990 and that the Thunderbird was insured under the same policy as the 1986 Pontiac Fiero.  Day contacted her broker, The Donald Ross Agency ("Ross" or "the Ross Agency"), who was the producer of this policy, and informed Ross or one of his employees that

her son intended to purchase another car shortly. She was advised to keep the policy in force until the new car was purchased and that it would then be added to the existing policy. On August 2, 1990 plaintiff ordered the Fiero and Day called Ross that day to inform Ross of the purchase. Ross assured her that the existing policy would cover the Fiero. Plaintiff continued to make payments of his policy premiums when due assuming the Fiero was covered.

On September 6, 1990, the JUA, through its servicing carrier EDS, sent plaintiff a notice of cancellation effective September 29, 1990, which reads as follows:

> You are hereby notified that your policy will be canceled at the cancellation effective date shown above. The reason for cancellation is:
> FAILURE TO SUPPLY REQUIRED UNDERWRITING INFORMATION. YOU MAY AVOID CANCELLATION IF YOU COMPLY WITH THE FOLLOWING AND RETURN IT PRIOR TO THE CANCELLATION EFFECTIVE DATE.
> 1. A copy of New Jersey Vehicle Registration(s) for the following vehicles or a current vehicle on policy: 77 Thunderbird.

Plaintiff asserts he did not receive this notice until September 24, 1990, when he received a copy from Ross under cover of its letter of that date which reads as follows:

> We have received a letter from EDS asking for a copy of the registration for your Thunderbird.
>
> Please send this to us in the enclosed envelope which we have provided for your convenience.
>
> Would appreciate your giving this your immediate attention in order to avoid possible cancellation of policy.

In his first affidavit plaintiff certifies that he assumed the JUA wanted the registration for the Pontiac Fiero and that he immediately sent a copy of that registration to Ross. In Day's second affidavit, she states that the used car dealer through whom plaintiff bought the Pontiac Fiero was to arrange its registration and that after her son received the notice of cancellation, she attempted to get the registration from the dealer, but was informed that the car had not yet been registered. Despite informing the dealer of the deadline of September 29, 1990, contained in

the cancellation notice, the dealer stated he could not get the car registered until October 1, 1990. Plaintiff apparently got the registration that day and hand delivered it to the Ross Agency which forwarded a copy on October 3, 1990, via a copy of the cancellation notice on which an employee at the Ross Agency placed the following handwritten notation:

Insured doesn't have Thunderbird any more. Car was junked. He also does not have registration on the Thunderbird.

Enclosed herewith is copy of his present registration.

Based upon these facts plaintiff argues that since the policy (# E19447684) was in effect since May 22, 1990, the JUA could not cancel it except for the reasons enumerated in *N.J.S.A.* 17:29C–7(A) which reads as follows:

(A) A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:

(a) Non payment of premium; or

(b) The driver's license or motor vehicle registration of the named insured or of any other operator who either resides in the same household or customarily operates an automobile insured under the policy has been under suspension or revocation during the policy period or, if the policy is a renewal, during its policy.

It is clear that the reason given by EDS for cancellation is not one of those enumerated above.

However, plaintiff ignores the language of *N.J.S.A.* 17:29C–7(B) (emphasis added), which reads as follows:

(B) This section shall not apply to any *policy or coverage* which has been effect less than 60 days at the time notice of cancellation is mailed or delivered by the insurer unless it is a renewal policy.

Plaintiff argues that the words "policy" and "coverage" contained in the above statute should be read as synonymous and if so read, the JUA's notice of cancellation should be held to be ineffective since plaintiff's policy was in effect for more than sixty days and the reason given for cancellation by the JUA's servicing carrier, EDS, was not one listed in *N.J.S.A.* 17:29C–7(A).

The court, in interpreting a statute, is to give effect to the intent of the Legislature, and in doing so, the court must consider "the language of the statute, the nature of the subject matter, the contextual setting, the policy behind the statute, statutes in *pari*

*materia,* and concepts of reasonableness." *County of Essex v. Waldman,* 244 *N.J.Super.* 647, 656, 583 *A.*2d 384 (App.Div.1990), *certif. den.* 126 *N.J.* 332, 598 *A.*2d 890 (1991).

■ Here, the court is called upon to interpret the words "policy or coverage" in *N.J.S.A.* 17:29C–7(B). In interpreting the words "policy" and "coverage," different meanings should be attributed to these words, particularly since they are separated by the word "or," in order to give some effect to each. In *Wildwood Storage Center, Inc. v. Mayor of Wildwood,* 260 *N.J.Super.* 464, 616 *A.*2d 1331 (App.Div.1992), the court stated the principles of construction applicable to such statutory expressions as follows:

> The word "or," while normally used to indicate disjunctive clauses, *State v. Duva,* 192 *N.J.Super.* 418, 421 [470 *A.*2d 53] (Law Div.1983), has often been interpreted to mean the conjunctive if this is more consistent with legislative intent. *See, e.g., State v. Holland,* 132 *N.J.Super.* 17 [331 *A.*2d 626] (App.Div.1975). To interpret "or" as conjunctive, however, is different from interpreting the two phases, before and after the "or" to mean the "same thing." Our Supreme Court has cautioned that "courts are to avoid constructions that make statutory provisions redundant or meaningless." *State v. Wright* 107 *N.J.* 488, 502 [527 *A.*2d 379] (1987). The only way to give some effect to both phrases in this statute is to interpret them generously so they have different meanings.

[260 *N.J.Super* at 471, 616 *A.*2d 1331.]

The term "policy" has been defined as "the evidence delivered to the insured of the contract of the insurer, and ordinarily, of itself, constitutes complete evidence of the contract." *Meier v. New Jersey Life Ins. Co.,* 195 *N.J.Super.* 478, 486, 480 *A.*2d 919 (App.Div.1984), *aff'd* 101 *N.J.* 597, 503 *A.*2d 862 (1986). The term "coverage" is defined in *Webster's Ninth New Collegiate Dictionary* (1988), at p. 300, in pertinent part as follows: "2 : something that covers; as *a* : inclusion within the scope of an insurance policy or protective plan: INSURANCE."

■ Thus, the term "coverage" is narrower in scope than the term "policy" and connotes a distinct part of an insurance policy providing the policyholder with insurance as to a defined risk or risks coming within its terms; whereas, the term "policy" refers to the entire insurance contract, the terms of which may furnish

insurance or "coverage" for many distinct or different types of risks.

It is clear from the use of the words "policy" and "coverage" that the Legislature did not limit or intend in *N.J.S.A.* 17:29C–7(B) to limit the rights of the insurer to cancel where the cancellation applies to a "coverage" which has been in effect for less than sixty days. In this case the coverage for the Pontiac Fiero was in effect only since August 8, 1990, or less than sixty days prior to September 6, 1990, the date on which the cancellation notice was mailed. Accordingly, the JUA was not limited in its rights to cancel by the provisions of *N.J.S.A.* 17:29C–7(A) and the grounds enumerated therein. Had the Legislature intended to limit the insurer's right to cancel policies in effect more than sixty days regardless of any new coverages added by the insured at the request of its policyholder more than sixty days after the effective date of the policy, the Legislature would not have added the words "or coverage" to paragraph (B) of *N.J.S.A.* 17:29C–7.

Apart from the court's construction of *N.J.S.A.* 17:29C–7(B), reference must also be made to the JUA Rules and the statute creating the JUA in determining the power of the JUA to cancel automobile insurance policies since it is only "where the JUA rules are silent or their meaning is ambiguous" that reference is to be made to the statutes and regulations applicable to the voluntary automobile insurance market governing policy cancellation. *Lopez v. Ins. Underwriting Ass'n,* 239 *N.J.Super.* 13, 20–21, 570 *A.*2d 994 (App.Div.1990), *certif den.* 122 *N.J.* 131, 584 *A.*2d 206 (1990).[1]

---

[1] It should be noted that the court in *Lopez,* in interpreting the Legislature's intent and in concluding that the JUA is not bound by the statutes governing policy cancellation and non-renewal by automobile insurers in the voluntary insurance market, *id.* 239 *N.J.Super.* at 20, 570 *A.*2d 994, failed to analyze the effect of *N.J.S.A.* 17:30E–6, which in directing the Commissioner of Insurance to promulgate a "plan of operation" for the JUA that, among other things, provides for "minimum requirements for the ... performance of service carriers," also

By law the JUA is permitted to provide automobile insurance coverage only to a "qualified applicant." *N.J.S.A.* 17:30E–9(a), which provides:

a. Any qualified applicant shall be entitled to apply to the association for insurance coverage available pursuant to section 27 of this Act. Subject the procedures established in the plan of operation, producers shall have authority to issue binders to qualified applicants.

*N.J.S.A.* 17:30E–3(m) (emphasis added) defines the term "qualified applicant" as follows:

m. "qualified applicant" means a person domiciled in New Jersey who is an owner of an automobile registered, *or to be registered within 60 days of application,* and principally garaged in this State, who has been refused coverage in the voluntary market, and who cannot be or is not placed in the voluntary market through the procedures established pursuant to subsection a. of section 26 of P.L.1983, c. 65 (C.17:30E–14). Qualified applicant shall also include a member of the United States military forces, if otherwise eligible for insurance coverage issued by the association, with respect to an automobile if, at the time the application is made, he is either (1) a nonresident who is stationed in this State; or (2) a resident who is stationed in another state, whose automobile is registered in this State and garaged in another state. *No person shall, however, be deemed a qualified applicant,* if the principal operator of the automobile to be insured does not hold a drivers's license which is valid in this State; or if a regular operator of the automobile other than the principal operator does not hold such a license; or if timely payment of premium is not tendered; or *if the applicant or principal operator of the automobile does not furnish the information necessary to effect insurance;* or if such person is engaged in the business of renting or leasing automobiles to others or if such person uses automobiles for commercial purposes.

Thus, except for members of the military, only a resident of New Jersey who holds a New Jersey driver's license and is the owner of a car registered and principally garaged in this state is entitled to purchase coverage from the JUA. Obviously, among other things, the JUA needs to assure itself that the automobile for which coverage is sought is registered in New Jersey. In order to effectively assure itself of that qualification for coverage the JUA has every right to demand evidence of such registration from the applicant. Indeed, *N.J.S.A.* 17:30E–3(m) by its terms denies an applicant status as a "qualified applicant" if the appli-

contains the following exception: "except that nothing herein shall be interpreted to affect the provisions of P.L.1968, c. 158 (C. 17:29C–6 et. seq.)."

cant or the principal operator of the vehicle "does not furnish the information necessary to effect insurance."

The right of the JUA to cancel a policy where the applicant fails to provide evidence that he or she is a "qualified applicant" or that the vehicle for which coverage is sought is an "eligible vehicle" may be found in the JUA Servicing Carrier Rules of Practice (page 7) which contain the following pertinent provisions concerning the grounds for policy cancellation:

> The servicing Carrier may cancel a policy at any time during the policy period, if it is based on one or more of the following:
>
> . . . .
>
> 2. The named insured is not or ceases to be qualified applicant.
> 3. The covered vehicle is not or ceases to be an eligible vehicle.

The term "eligible vehicle" is defined in Rule 2 of the JUA Manual of Rules and Rates, which reads in pertinent part as follows:

> A. ELIGIBILITY—The automobiles defined below shall be eligible for coverage through the Association.
>
> 1. Automobiles:
>
>    a. Private Passenger—automobiles of the private passenger or station wagon type: . . .

It is clear from the record on these motions that plaintiff purchased the 1986 Pontiac Fiero on August 2, 1990, and that the policy endorsement furnishing coverage for this automobile was issued effective August 8, 1990. Rosalie Day, plaintiff's mother, states in her first affidavit that she called the Ross Agency on August 2, 1990, informed them of the purchase and requested coverage for the Pontiac, and that the Ross Agency assured her the existing JUA policy would provide such coverage. However, the record is devoid of information as to what papers were submitted to EDS by Ross (e.g., a formal application or merely a request for Policy Change) which caused EDS to issue the endorsement covering the Pontiac effective August 8, 1990, or when such papers were forwarded to EDS by Ross.

However, in reliance upon the statutory definition of "qualified applicant" contained in *N.J.S.A.* 17:30E–3(m) as "a person domi-

ciled in New Jersey who is an owner of an automobile registered, *or to be registered within 60 days of application,* and principally garaged in the State, ...," plaintiff argues that the cancellation notice issued by EDS on behalf of the JUA canceling the policy effective September 29, 1990, was void and ineffective to terminate coverage on that date because the cancellation date was less than sixty days from the date the Pontiac was purchased and coverage for same was requested.

The JUA argues that under its Manual of Rules and Rates (page A–7), only new residents of New Jersey have 60 days from the date of the application within which to obtain New Jersey registrations. The section of the JUA manual upon which defendant relies, appearing under the heading "Determination of Coverage Eligibility," was issued effective April 1990 and states in pertinent part as follows:

(1) By statute, an eligible applicant for coverage in the NJAFIU must be a NATURAL PERSON, domiciled in New Jersey, have a New Jersey drivers' license and own vehicles registered and garaged in New Jersey. *New residents have 60 days to obtain New Jersey licenses and registrations.*

A NATURAL PERSON shall include (i) an individual, or (ii) husband and wife while residing in the same household, or (iii) two or more residents in the same household. (Emphasis added).

It is clear that the statutory definition of "qualified applicant" contained in *N.J.S.A.* 17:30E–3(m), does not restrict the right to register a vehicle within sixty days of the application to new residents only. The statute is broadly worded and applies to all New Jersey residents applying to the JUA for coverage. The sixty day registration rule was added by an amendment to the statute which was in effect prior to the date on which the section of the JUA manual on which defendant relies was promulgated and prior to the date (September 6, 1990) on which EDS issued the cancellation notice in dispute.

It is well-recognized that administrative regulations "cannot alter the terms of a legislative enactment or frustrate the policy embodied in the statute." *N.J. Chamb. Commerce v. N.J. Elec. Law Enforce. Comm.,* 82 *N.J.* 57, 82, 411 *A.*2d 168 (1980).

The court, in deciding the validity of an administrative regulation, "must determine whether it is consistent with the policy of the legislation." *In re Barnert Memorial Hospital Rates*, 92 *N.J.* 31, 39, 455 *A*.2d 469 (1983). It is equally well settled that "[w]hen the rule of an administrative agency contravenes the statute which creates it, the rule lacks legal efficacy." *Kamienski v. Bd. of Mortuary Science*, 80 *N.J.Super.* 366, 370, 194 *A*.2d 743 (App.Div. 1963). Accordingly, a state agency, in the execution of its rule making powers, may not exceed a declared statutory policy. *Gladden v. Pub. Emp. Retirem. Sys. Trustee Bd.*, 171 *N.J.Super.* 363, 374, 409 *A*.2d 294 (App.Div.1979). Even where an administrative agency has enforced an erroneous construction of its statutory powers over a number of years, such a construction by the agency "does not make valid what is clearly invalid." *Id.* at 374, 409 *A*.2d 294; *Kamienski v. Bd. of Mortuary Science, supra,* 80 *N.J.Super.* at 370, 194 *A*.2d 743.

■ Applying the principles stated above, it is clear that the rule promulgated by or under the authority granted to the Commissioner of Insurance as is reflected in above quoted provision in the JUA Manual of Rules and Rates upon which defendant relies is ultra vires in that it clearly contravenes the Legislature's intent as expressed in *N.J.S.A.* 17:30E–3(m) by unlawfully restricting the sixty day registration period to new residents.

Since the cancellation notice issued to plaintiff effectively canceled his policy prior to expiration of the sixty day period to which he was entitled under *N.J.S.A.* 17:30E–3(m) within which to register the 1986 Pontiac Fiero, the cancellation notice was premature and is, therefore, invalid and ineffective to terminate plaintiff's coverage prior to the accident of October 5, 1990.

■ In addition, the failure of the JUA to follow its own rules for cancellation in this case provides an alternative ground for granting plaintiff's motion for partial summary judgment and denying defendant's cross-motion.

Special rules with respect to the servicing carrier obtaining a copy of the applicant's driver's license and registration are contained in paragraph 5 on page A–5 of the Appendix to the JUA Manual of Rules and Rates under the caption: "Driver Improvement Plan—Further Clarification." Paragraph 5 reads as follows:

> If any application is submitted without copies of driver license, registration and/or lease, the Servicing Carrier will process the application and send a 15-day follow-up letter to the applicant. If the information is not received, the Servicing Carrier will send a second notice accompanied by Notice of Cancellation for failure to respond to a written request for underwriting information.

It is clear that the JUA in issuing the cancellation notice was required to follow procedures outlined in its own rules since compliance with such insurance department rules and regulations is required for cancellation to be effective. See *Lopez v. Ins. Underwriting Ass'n, supra*, 239 *N.J.Super.* at 21, 570 *A.*2d 994; *Lilly v. Allstate Ins. Co., supra*, 218 *N.J.Super.* at 320–21, 527 *A.*2d 903; *Pinto v. Garretson*, 237 *N.J.Super.* 444, 447, 568 *A.*2d 119 (App.Div.1987); *Bruce v. James P. MacLean Firm*, 238 *N.J.Super.* 501, 505–506, 570 *A.*2d 49 (Law Div.), aff'd 238 *N.J.Super.* 408, 570 *A.*2d 1 (App.Div.1989).

It appears from the third affidavit of plaintiff that he did not receive the fifteen-day followup letter required by paragraph 5 on page A–5 of the Appendix to Manual of Rules and Rates after his application for coverage of the 1986 Fiero was received by EDS, nor did he receive, with the cancellation notice, the second letter required by that rule. The JUA has provided no evidence that expressly refutes the statements made by plaintiff in his third affidavit. In the second certification of Roberta McWilliams dated October 28, 1992 she states that it is customary for EDS to send a fifteen-day followup letter, but that neither the JUA's Plan of Operation nor New Jersey Statutes require the servicing carrier to keep a copy of the fifteen-day followup letter. While McWilliams states that the EDS Miscellaneous Driver Improvement Plan, a copy of which is attached to her certification, indicated that a Mr. C. Bailey sent plaintiff a letter on 6/22/90, it is clear that that letter pertained to the 1977 Thunderbird and not the 1986

Pontiac Fiero which was not even purchased by plaintiff until August 2, 1990. No similar record has been produced by EDS evidencing that a fifteen-day followup letter was sent to plaintiff by EDS requesting the registration for the Fiero nor does the McWilliams certification indicate even a custom by EDS to forward a reminder letter with the cancellation notice as required by the JUA rule in question.

A supplemental certification of McWilliams dated November 18, 1992, filed with leave of court following the oral argument of these motions, does not contain any evidence that EDS sent plaintiff a fifteen-day followup letter after the date on which he purchased the 1986 Pontiac Fiero or the date on which application was made on his behalf by the Ross Agency to have coverage for that car endorsed to the policy. The November 18, 1992 certification by McWilliams merely indicates that a fifteen-day followup letter was sent to plaintiff on July 17, 1990 which pertained to the 1977 Thunderbird. This letter does not establish compliance with the JUA rules concerning the 1986 Pontiac Fiero since it refers solely to the 1977 Thunderbird and was mailed sixteen days before plaintiff even purchased the Pontiac. Accordingly, defendant has presented no evidence of its compliance with its own rules requiring that a fifteen-day followup letter be sent to its policyholder with respect to the Pontiac Fiero before issuance of the cancellation notice.

Since the JUA defense of cancellation is an affirmative defense, it has the burden to prove compliance by its servicing carrier EDS with its rules and regulations pertaining to cancellation. See *Italian Fisherman v. Commercial Union Assur.*, 215 *N.J.Super.* 278, 282, 521 *A.*2d 912 (App.Div.), *certif. denied* 107 *N.J.* 152, 526 *A.*2d 211 (1987).

Having failed to meet its burden of proof on the cancellation defense, defendant's motion must be denied. Moreover summary judgment is appropriate against a party who fails to make a positive showing sufficient to establish the existence of facts essential to its case and as to which that party bears the burden of

proof at trial. *Celotex Corp. v. Cattret,* 477 *U.S.* 317, 106 *S.Ct.* 2548, 91 *L.Ed.2d* 265 (1986).

Accordingly, since the cancellation notice issued by defendant, EDS, on behalf or defendant, JUA, was premature and since EDS, in violation of JUA rules, failed to send a fifteen-day followup letter to plaintiff after he applied for coverage for that car before it issued the cancellation notice, plaintiff's motion for partial summary judgment on the issue of liability will be granted and defendant's cross-motion will be denied.