253 N.J. Super. 123 (1992)
601 A.2d 235
JOHN JUGAN AND CAROL JUGAN, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
WILLIAM POLLEN, M.D., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1991.
Decided January 15, 1992.
*126 Herbert Kruttschnitt, III argued the cause for appellant (Grossman & Kruttschnitt, attorneys; Eli L. Eytan, on the brief).
Richard Galex argued the cause for respondents (Garruto, Galex & Cantor, attorneys; Richard Galex, on the brief).
Before Judges KING, DREIER and GRUCCIO.
The opinion of the court was delivered by DREIER, J.A.D.
Defendant William Pollen, M.D. appeals from a default judgment entered against him in this medical malpractice case. This is our second opportunity to review plaintiff's claim. Initially, we reversed and remanded a judgment in favor of defendant Pollen based upon a jury verdict. On remand, the trial judge hearing the matter as a proof case entered judgments in favor of John Jugan for $2,041,450 and in favor of *127 Carol Jugan in the amount of $750,000, with prejudgment interest of $1,655,358.25. We are again constrained to reverse and remand for a new proof hearing. For an understanding of our decision on this appeal we must relate in some detail the procedural history of this matter, the facts, and so much of our earlier decision as will explain our actions and give guidance to the trial judge on remand.
The facts briefly summarized are that in the fall of 1982, Mr. Jugan was put in traction, operated upon unnecessarily by both defendant Dr. Pollen and then-defendant Stuart Friedman, M.D., for a laminectomy (disc removal and spinal fusion surgery). He was then post-operatively mistreated. Not only did the mistreatment cause severe pain, but Dr. Friedman, an addict, appropriated for himself the pain medication (Demerol) intended for the patient, leaving Mr. Jugan to suffer with little or no pain medication following the back surgery. Further, Dr. Pollen left the plaintiff unattended at the hospital for long vacation periods, and upon his return from one of these vacations attempted to discharge Mr. Jugan prematurely. Another physician at the hospital countermanded Dr. Pollen's order of discharge.
As a result of the disability which was caused by the operation and lack of proper post-operative care, plaintiff, although a 42-year-old formerly active man, was forced to undergo additional surgery, and apparently is now reduced to the life of an elderly, crippled man. Plaintiff asserts that his 35-year-old wife must care for him or make arrangements for his care because of what will be the life-long impairment suffered by Mr. Jugan at the hands of defendants Drs. Friedman and Pollen.
Plaintiffs filed their complaint on September 13, 1984. Dr. Pollen's answer was filed February 5, 1985. At a status conference on May 3, 1985, the court ordered Dr. Pollen to answer interrogatories within 40 days. Defense counsel, however, notified plaintiff's attorney that the interrogatories could *128 not be answered because Dr. Pollen's whereabouts were unknown. According to newspaper articles of which the present trial judge took judicial notice, Dr. Pollen was absent from the jurisdiction for varying periods concealing assets in Europe, Canada, the Caribbean and South America. He is now in the custody of federal officials.
On November 22, 1985 the court entered an order denying Dr. Pollen's motion for a protective order regarding his obligations to answer interrogatories, and granted plaintiff's cross motion to dismiss the answer and all affirmative defenses for failure to file a timely response to the interrogatories. On December 18, 1985, Dr. Pollen's attorney answered the interrogatories to the best of his knowledge and requested that his client's answer be restored. The court denied this application on January 10, 1986. Thereafter Dr. Pollen's attorney who had been retained by his malpractice carrier moved to be relieved from the case, but the court denied this motion on July 3, 1986.
The matter was tried before a jury in March of 1988, and judgment was entered on April 20, 1988 awarding plaintiffs $10,000 in compensatory damages and $150,000 in punitive damages against Dr. Friedman on the issue of the conversion of the drugs. The jury determined, however, that there was no cause of action against either defendant based upon the alleged unnecessary surgery. Plaintiffs' motion for a new trial was denied and plaintiffs filed their initial appeal to this court.
In plaintiffs' initial appeal they claimed first, that the trial judge had exceeded his discretion in permitting Dr. Pollen's counsel to open and close to the jury and to offer affirmative evidence through the testimony of the codefendant. Second, plaintiffs claimed that the judge mistakenly and without proper limiting instructions admitted hearsay evidence offered by defendant Friedman which included opinions upon which Dr. Pollen could have been cross-examined had he not absented himself from the trial. Third, plaintiffs asserted that the trial judge should not have prohibited all reference to Dr. Pollen *129 having absented himself from the trial, nor should the court have specifically declined both to give a charge under State v. Clawans, 38 N.J. 162, 173, 183 A.2d 77 (1962), and to permit comment upon any negative inference that could be drawn from Dr. Pollen's failure to appear. In fact, when plaintiffs' counsel, frustrated by the sustaining of the objection to counsel's statement that Dr. Pollen merely was absent, stated that "they didn't rest, they quit," the court imposed a $250 sanction against plaintiffs' counsel. We noted in our initial opinion that while the language that Dr. Pollen had "quit"
was somewhat inappropriate, ... we can appreciate plaintiffs' frustration when he successfully had Dr. Pollen's answers stricken and defenses suppressed, and yet the jury was left in a position of assuming that Dr. Pollen may have merely been sick, busy caring for patients, or otherwise unavoidably unable to come to court. In summation, Dr. Pollen's attorney was permitted to state merely that Dr. Pollen was "unavailable," and the judge in his charge reiterated that Dr. Pollen was "absent" and that the jury should not speculate why.
In our earlier opinion we laid down certain guidelines for the trial judge on remand, and we restate them here. With regard to a defendant who refuses to cooperate in the discovery process and absents himself voluntarily from trial, there is no doubt that even such a defendant might be granted some limited participation in the trial. The interest both of that defendant and of the carrier providing the defense must be balanced. In this case we understand that the defense has been and now is being provided under a reservation of rights, and that the liability of the carrier is the subject of a pending declaratory judgment action.
At the initial trial plaintiffs claimed that the court had granted too much clemency to counsel retained for Dr. Pollen by the carrier. Specifically, plaintiffs objected to the court having permitted opening and closing statements and cross-examination of witnesses. We there noted, and now reiterate:
Default judgments entered by the court are governed by R. 4:43-2(b). According to cases decided under this rule, it is well-settled that whether a defaulting party may cross-examine liability witnesses against him is a matter of judicial discretion. In most of the reported cases, however, cross-examination has been permitted. B.L.J. Leasing Corp. v. Whittington, Singer, Davis, *130 204 N.J. Super. 314, 322-323 [498 A.2d 1262] (App.Div. 1985); Johnson v. Johnson, 92 N.J. Super. 457, 464-465 [224 A.2d 23] (App.Div. 1966); Perry v. Crunden, 79 N.J. Super. 285, 292 [191 A.2d 316] (Co.Ct. 1963); but see Fox v. Fox, 76 N.J. Super. 600, 604 [185 A.2d 230] (Ch.Div. 1962); and cf. Douglas v. Harris, 35 N.J. 270, 277 [173 A.2d 1] (1961).
We noted that in Fox, the decision to limit cross-examination was based upon the judge's findings; that the plaintiffs claims were simple ones; and that more stringent limitations might be proper under other fact situations. In fact, the court in Perry v. Crunden, distinguished Fox on that basis. 79 N.J. Super. at 291 [191 A.2d 316].
We also stated that while other types of participation were possible, namely the offering of direct liability witnesses and the making of opening and closing statements to the jury, both of these areas are usually foreclosed to such a defaulting defendant.
It is well-settled that absent special circumstances a defaulting party may not offer his own liability witnesses, despite the language in Fox stating "a defendant ... [may] even present counter proofs." Fox, supra, [76 N.J. Super.] at 604 [185 A.2d 230]. See Scott v. Scott, 190 N.J. Super. 189, 195 [462 A.2d 614] (Ch.Div. 1983), and Metric Inv., Inc. v. Patterson, 98 N.J. Super. 130, 133 [236 A.2d 187] (Law Div. 1967), aff'd, 101 N.J. Super. 301 [244 A.2d 311] (App.Div. 1968) ("entry of a default precludes defendant from offering testimony in defense...."); Perry, supra, [79 N.J. Super. at 293 [191 A.2d 316] ("defaulting defendant would be prohibited from offering direct evidence in support of his case...."). We note that in Beech Forest Hills, Inc. v. Morris Plains, 127 N.J. Super. 574, 581-582 [318 A.2d 435] (App.Div. 1974), the trial court had allowed the defaulting defendant to present evidence, but only on the "novel" issue of damages. This procedure was accepted by the Appellate Division because "none of the experts" presented by the plaintiff could provide such testimony (id. at 582 [318 A.2d 435]), and because the trial court found that defendant's conduct was not contumacious.
We then discussed the limitation upon opening and closing statements:
Only two of the cases in this area specifically mention opening and closing statements. A defaulting party may not usually make such statements. In Perry, the court wrote that this prohibition was one of only two burdens created by defaulting (the other being the prohibition against offering his own witnesses), and added that "these sanctions would be sufficient deterrents [to prevent defendants from ignoring summonses] in most cases." Perry, supra, [79 N.J. Super.] at 292-293 [191 A.2d 316]. The reason for the preclusion is obvious. If a defendant has withheld discovery, thus hampering the development *131 of plaintiff's case, it would be unfair to permit defense counsel even to urge that plaintiff may not have convinced the jury of defendant's liability. In some unusual cases, where there has been no such prejudice, a trial judge might relax this sanction to some extent.
We noted that if the contumacious conduct has been effectively purged, some limited argument might be permitted, "especially in the areas of damages. See B.J.L. Leasing Corp., supra, 204 N.J. Super. at 323 [498 A.2d 1262] (`we will exercise our discretion and permit counsel for defendants to attend the proof hearing, examine plaintiff's witnesses and present arguments as to the proper balance allegedly due.' (emphasis added)."
We thus had established a dichotomy between the sanction of precluding opening and closing statements, or production of witnesses usually to be imposed, and the sanction of foreclosing cross-examination, usually to be withheld. If the court's decision concerning either is to depart from the usual practice, we would expect an explanation from the trial judge relating to the equities of the case and interests to be served. One factor to be considered might be whether the trial is a bench trial or a jury trial. More participation might be permitted in a bench trial where the judge is less apt to be swayed by emotional arguments and will be more attuned to the effect which the contumacious conduct regarding discovery may have had upon the opposing party's ability to marshall facts. Additionally, there may be a different treatment between proofs concerning claims of liability and damages. Cf. Douglas v. Harris, supra, 35 N.J. at 277-278, 173 A.2d 1. In some cases, such as the usual auto accident, the defaulting defendant's refusal to participate in discovery might have little effect upon the proof of damages, but the insurer-retained counsel might be granted more leeway in refuting the damage claim. In other cases, such as in some medical malpractice cases, the absence of discovery from a defendant might materially hamper the proof of a damage claim, and more stringent restrictions might be appropriate.
*132 As we noted in our 1989 opinion, in a jury trial "a plaintiff should be permitted to comment upon the defendant's absence," applying State v. Clawans, supra, 38 N.J. at 171, 183 A.2d 77. The "contumacious conduct should have had at least the same effect as if [the defendant] merely did not appear as a witness." In a bench trial, no charge is needed to explain these principles to a jury, but the judge must consider how plaintiff's proofs have been hampered by the defendant's failure to cooperate, and that defendant's non-appearance could well bespeak an inability to refute plaintiff's factual claims concerning defendant's conduct.
After laying down these principles which we expected would be applied at an ensuing jury trial, we reversed principally because of evidential errors, briefly described earlier.
The matter was set for retrial on September 4, 1990, but briefly adjourned at the request of Dr. Pollen's counsel who moved to reinstate Dr. Pollen's answer, since he had now returned to the jurisdiction and apparently was willing to testify. After reviewing our earlier opinion, the motion judge conducted a short hearing. He determined that defendant could not participate to any extent in the proceedings because "Dr. Pollen's absence from this trial and his failure to participate in pre-trial discovery and his failure to answer interrogatories was his own doing and was contumacious." Rather than order a jury trial, the judge directed a proof hearing pursuant to R. 4:43-2(b), which provides in part:
If, in order to enable the court to enter judgment... it is necessary ... to determine the amount of damages or to establish the truth of any allegation by evidence or to make an investigation of any other matter, the court may conduct such hearings with or without a jury or ... take such proceedings as it deems appropriate. (emphasis supplied).
The matter was then referred by the motion judge to the trial judge who held the proof hearing on October 31, and November 1, 1990.
On this appeal defendant contends first that defense counsel was overly restricted in participating in the trial; second, that *133 defendant was entitled to a trial by jury on remand; third, that inadmissible and incompetent evidence was introduced in support of plaintiff's claim (not raised in the trial court); and fourth, that defendant's default should have been vacated, the answer reinstated and the matter fully tried on its merits.
As discussed earlier, some discretion is placed in the trial court concerning the extent of the sanctions to be visited upon a defendant whose default has been entered as a result of non-cooperation in the discovery process. This discretion, however, must be exercised reasonably, and the usual practice has been outlined earlier in this opinion. The trial judge properly foreclosed defendant from making an opening or closing statement, and given the late application to permit Dr. Pollen to appear, also precluded defendant from producing any witnesses.
Insofar as cross-examination is concerned, however, we find that the motion judge and trial judge mistakenly foreclosed defense counsel from cross-examination on the issue of damages. On the issue of liability, however, we agree that it would have been unfair for defense counsel to have been permitted to cross-examine and therefore possibly inject theories of liability or to challenge factual predicates to liability which might have been disclosed in answers to interrogatories or through depositions of defendant. This liability cross-examination involves a matter of discretion with which we would not interfere. We realize that the court may have properly decided the question either way based upon the trial situation.
Cross-examination concerning damages, however, presented a different matter. With the exception of the initial weeks of plaintiff's ordeal (which might also have been known by Dr. Pollen and thus subject to some discovery prejudice), the vast majority of plaintiff's proofs concerning damages had nothing to do with information that would have been aided or refuted through defendant's participation. Plaintiff has already recovered against Dr. Friedman, who did not join in the initial appeal, for the ordeal concerning the converted pain-killing drugs. The *134 thrust of plaintiff's damage claim here is that the quality of his life has so deteriorated as to justify substantial damages. Dr. Pollen's participation in discovery had little if any effect on this issue, and the insurance carrier may well be the real party in interest.
We do not by our reversal wish to impugn plaintiff's proofs or to challenge the quantum of the award. Yet, we cannot determine how plaintiff's claims might have been challenged if cross-examination had been permitted. We recently reviewed the necessity of cross-examination in Georgis v. Scarpa, 226 N.J. Super. 244, 255-256, 543 A.2d 1043 (App.Div. 1988) (there concerned with the examination of experts). We quoted from Perry v. Crunden, supra, and we repeat that quotation here.
In determining the extent to which counsel for a defaulting party may participate, the court might well ask itself the question  Can counsel for the defaulting defendant make any material contribution in aiding the triers of the facts in their search for the truth? The reply to this question can be found in 5 Wigmore, Evidence (3d ed. 1940) § 1367. at pages 28 and 29, where Professor Wigmore had the following to say with respect to the contribution cross-examination makes in establishing where the truth lies:
"For two centuries past, the policy of the Anglo-American system of Evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law. * * *"
* * * it [Cross-examination] is beyond any doubt the greatest legal engine ever invented for the discovery of truth. (Emphasis added).
79 N.J. Super. at 292, 191 A.2d 316.
We reiterate that a trial, and even a proof hearing, is a search for truth. To determine this truth, our system of jurisprudence resorts to adversarial proceedings. Where the adversarial nature of the proceeding has been thwarted by a party's default, we strip away that party's rights to participate one by one so as not to prejudice the plaintiff and to punish the contumacious party. Yet we also see the reality of damage payments which are not made solely by the guilty party, but possibly by an insurance carrier which is attempting to protect its policyholders as a group and to prevent windfalls. The 1989 amendment to R. 4:17-4(a) permitting answers to interrogatories by liability carriers conducting a defense indicates our *135 recognition that there are times where we must distinguish between the insured and insurer. The damage aspect of a case such as the one before us is such an occasion. Any incidental benefit that the defaulting defendant himself might reap through his carrier's participation by cross-examination is a small price to pay for the assurance that the amount of damages awarded has at least been tested by the tension inherent in an adversary proceeding. There may be cases where even this participation should be withheld, but if it is, the court should clearly indicate why the absence of such cross-examination serves the interests of justice.
As to defendant's assertion that he was entitled to a jury trial, this entitlement was lost when the court struck his answer and entered a default. As quoted earlier, R. 4:43-2(b) grants the trial judge's discretion to conduct the hearing either with or without a jury. We will not disturb the judge's exercise of that discretion.
We summarily reject any thought that defendant at this late date might be permitted to have his default vacated by now submitting answers to interrogatories, and making himself available for depositions. Whatever rights he may have had under R. 4:43-3 to set aside the default "for good cause shown," the untimeliness of his demand and the commensurate prejudice to plaintiff precludes such action. Similarly, there is no basis to relieve defendant from the order under R. 4:50-1.
Insofar as defendant has contested the admission of alleged hearsay or double hearsay evidence at the proof hearing, plaintiff claims that defense counsel still could have objected, since only his rights of opening, closing, cross-examining and presentation of witnesses had been limited. The record reveals, however, that defense counsel was precluded from all participation. The trial judge stated that defendant "individually and/or through his counsel shall not be permitted to testify, produce any witnesses, provide opening and closing statements, cross examine any witness, object to or participate in any way." *136 Counsel, if he appeared, was relegated to the status of a spectator.
On remand, defense counsel may object to inadmissible evidence, but we remind the parties of the provisions of Evid.R. 3:
In civil proceedings, if the judge finds at the hearing that there is no bona fide dispute between the parties as to a material fact, such fact may be proved by any relevant evidence, an exclusionary rule shall not apply, except for Rule 4 or a valid claim of privilege.
If a particular hearsay document is offered at a proof hearing and there is no bona fide dispute as to the accuracy of its contents, the trial judge is not precluded from admitting the document. Likewise, if a hearsay statement is testified to by plaintiff or any other witness and there is no bona fide dispute concerning the accuracy of the included statement, it may similarly be accepted. See Moschou v. DeRosa, 192 N.J. Super. 463, 467, n. 2, 471 A.2d 54 (App.Div. 1984). In this regard, where defendant's failure to participate in discovery bears upon the court's decision to admit such hearsay statement as not being the subject of a "bona fide dispute between the parties" the trial judge may expand the sanctions against defendant by foreclosing such objections.
We also call the parties' attention to R.P.C. 3.2 and 3.4(a) requiring parties and attorneys to "stand ready to admit the truth of important relevant matters where there is no real controversy concerning them." Dewalt v. Dow Chemical Co., 237 N.J. Super. 54, 61, 566 A.2d 1168 (App.Div. 1989). We there urged trial judges to impose appropriate sanctions whenever they meet with an "obstinate and unreasonable refusal to admit facts which are undisputed." Ibid.
Lastly, we note that some objections raised by defendant in his brief relate to statements made to plaintiff by physicians who advised plaintiff concerning the limitation of his activity. Such statements apparently were not objectionable as hearsay in that they appear to have been offered to explain plaintiff's actions, and not for the truthfulness of their content. See Evid.R. 63, defining hearsay in part as "a statement offered to *137 prove the truth of the matter stated." These statements were offered to prove that plaintiff limited his activity based upon advice given to him. It was the fact that these statements were made to him that was evidential, not the truthfulness of the statements' contents. The trial judge shall be governed accordingly on remand.
We realize the attenuated nature of this proceeding and the expenses to which plaintiffs have been subjected. Further, given defendant's connected legal problems and the possible lack of coverage for the judgment, we have hesitated before ordering this new trial. Yet, as we found that plaintiffs' rights had been violated by the initial trial, we cannot overlook the fact that defendant's or his insurer's rights were unduly limited by the conduct of the proof hearing. We can only request that the trial judge expedite the rehearing and perhaps urge the stipulation of as many facts as possible to the end that this litigation may finally be terminated.
The judgment appealed from is reversed and the matter is remanded to the Law Division for retrial in accordance with this opinion.