**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1820-16T1

CYNTHIA TOPOLESKI AND
EUGENE W. TOPOLESKI,

     Plaintiffs-Appellants,

v.

OLIGERT VESHI,

     Defendant-Respondent,

and

DEBORAH DAVIS,

     Defendant.

_____

Argued February 5, 2018 – Decided January 8, 2019

Before Judges Accurso and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. DC-000171-16.

Amit Deshmukh argued the cause for appellants (Desh Law, LLC, attorneys; Amit Deshmukh, of counsel and on the brief).

Amy E. Lefkowitz argued the cause for respondent (Law Offices of Curt J. Geisler, LLC, attorneys; Amy E. Lefkowitz, of counsel and on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Plaintiffs Cynthia Topoleski and Eugene W. Topoleski appeal the August 28, 2016 order of the Special Civil Part dismissing their complaint for damages arising from their purchase of a used car, and the November 14, 2016 order denying their motion for reconsideration. We reverse and remand for a new hearing.

I.

The following facts are derived from the record. Defendant Oligert Veshi listed a 2001 Volkswagen Jetta for sale on Craigslist, a classified advertisement website. The car was fourteen years old with 103,000 miles on its odometer. The advertisement stated that the vehicle "runs and drives without a problem" with "engine and transmission 100%" and "[n]o [c]heck engine light." Veshi offered to sell the car for $5000, or best offer.

In response to the advertisement, Eugene[1] contacted Veshi to express interest in the car. On June 11, 2014, Eugene inspected the car and took it for a test drive, during which it operated without incident. The check engine light was not illuminated during the test drive, which, according to Eugene, was limited to a single block because Veshi informed him that the car was unregistered and was displaying license plates from another vehicle. The trial court found that Eugene negotiated with Veshi, who agreed to sell the car to him for $3200.

Two days later, on June 13, 2014, Eugene purchased the car with money from Cynthia, his mother. Cynthia intended to have her daughter use the vehicle. According to Eugene, he headed home with the vehicle, and after driving for five minutes, the check engine light illuminated, as did several other warning lights. In addition, the car began to malfunction, had little power, and would not go above approximately thirty miles per hour.

On June 17, 2014, four days after purchase, Cynthia arranged for an auto mechanic to examine the car. The mechanic noted that the check engine light was illuminated, as were several other warning lights, including the air bag,

---

[1] Because plaintiffs share a last name, we refer to them by their first names. No disrespect is intended.

"ABS," and "TRAC" lights. The mechanic also found that an air flow sensor had been installed backwards. When the sensor was reinstalled, it became apparent that it was the wrong size for the car. Finally, the mechanic determined that the vehicle was missing light bulbs and a timing cover, and had connectors that were unwired. He also made a notation about the camshaft circuit, although the nature of his finding is unclear. No repairs were done to the vehicle at that time. Plaintiffs were charged $96.30 for the inspection.

Three months later, on September 11, 2014, a second mechanic evaluated the car. At that point, the car had 104,488 miles on the odometer. He found activated fault codes, and replaced several sensors and components, including the camshaft sensor, crankshaft sensor, catalytic convertor, and flex pipe joint. After performing his work, the second mechanic test drove the vehicle, during which the car performed poorly. Plaintiffs were charged $1,813.26 for the repairs.

On or about December 29, 2015, plaintiffs filed a complaint in the Special Civil Part against Veshi. Plaintiffs sought damages for breach of contract, negligence, and unconscionable commercial practices under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -210 (CFA or the Act). They allege Veshi, in his advertisement and communications with Eugene, deliberately

concealed material facts concerning the poor condition of the car, and that they relied on Veshi's misrepresentations to their detriment. Plaintiffs sought $5,560.53 in actual damages, and costs of suit, with pre- and post-judgment interest. In addition, on their CFA count, plaintiffs sought treble damages, as well as attorney's fees. After service of the complaint, the clerk entered default against Veshi.

The trial court held a proof hearing on August 25, 2016, at which Veshi's participation was limited to the opportunity to cross-examine plaintiffs' witnesses. See Jugan v. Pollen, 253 N.J. Super. 123, 129-31 (App. Div. 1992). Before the submission of proofs, Veshi, who appeared without counsel, testified that he was not served with the complaint because plaintiffs sent it to an incorrect address. Plaintiffs' counsel countered that after an initial attempt to serve Veshi at an incorrect address, the complaint was sent to Veshi's correct address. The court declined to consider vacating the default against Veshi in the absence of a motion. Plaintiffs elected to proceed with the proof hearing.

Both Cynthia and Eugene testified. Veshi declined to cross-examine the Topoleskis. In addition, James R. Momana testified as an expert witness in the repair and appraisal of Volkswagens. He testified that in March 2015, he attached the car to a "reader," which reported that the components replaced in

September 2014 continued to produce fault codes, despite their recent repair. Although he cleared the fault codes while the engine was off, the codes reappeared as soon as the car was restarted. The expert opined that the car had serious deficiencies that were not corrected by the prior mechanic's interventions. He further opined that the amount plaintiffs paid to repair the car was reasonable. Veshi declined to cross-examine Momana.

On August 26, 2016, the trial court issued a written opinion, in which it concluded plaintiffs had not proven that Veshi misrepresented the condition of the car in his advertisement or verbally to Eugene at the time of the sale. The court found that when Eugene took the car for a test drive, it operated properly and the check engine light was not illuminated. In addition, the court noted that plaintiffs waited until September 2014, three months after the purchase, to have the car serviced by a mechanic. The court held that

> Cars break. They break at the most inopportune times. Owners and operators of cars sometimes get stranded on our highways because they do not anticipate that the cars they drive will brea[k] down.
>
> Is it a coincidence? Was the 14[-]year[-]old car with 103,000 miles ready to break? Did the defendant know this? Is it not equally likely that the defendant did not know?
>
> These are the questions that this Court is left with. They stem from the significant delay in acquiring the

initial diagnostic work done by Dave's Friendly Service[.] [Eugene's] testimony that the check engine light did not come on until after he test-drove the car and while he was driving home; and Mr. Momana's testimony that if a fault existed, if on[e] were to have used the reader to clear the codes, once the car started again, the fault would re-occur and the check engine light would come on.

This Court cannot conclude that the plaintiff proved, by the simple preponderance of the evidence that the defendant misrepresented the condition of his car when he sold it to [Eugene.]

[(footnote omitted).]

The court also rejected plaintiffs' negligence and breach of contract claims, concluding that

[t]he sale of a used car is generally regarded as an "as-is" sale. The Court is unaware of any authority for the proposition that the seller of a used automobile has a duty to inspect his automobile before selling it and to warn a potential purchaser of the conditions of an automobile. Absent such a duty there is no negligence claim to consider.

The plaintiffs' breach of contract claim obligates the plaintiffs to prove that they did not receive the consideration that they bargained for.

They bought a 14[-]year[-]old car with 103,000 miles on it. [Eugene] negotiated the price from $5,000 to $3,200. He received what he bargained for. He did not bargain for a guaranty or a warranty. The plaintiffs did not prove breach of contract.

7

On September 16, 2016, plaintiffs moved for reconsideration of the trial court's order. The motion was supported by certifications from Cynthia and Eugene. For the first time, Cynthia certified that shortly after the purchase, she contacted Veshi and demanded that he accept return of the vehicle and refund her money. When he refused, she filed suit against Thomas Ruiz, who she thought was the person who sold her the vehicle because he was listed as the owner on the title given to Eugene at the time of the sale. According to Cynthia, she obtained a default judgment against Ruiz, who, when contacted by Cynthia, told her that in 2011 he donated the vehicle to "1-800-JUNK-CAR" because it had been flooded during Hurricane Irene and was unusable. Ruiz stated that he turned the title to the vehicle over to the junk yard to which the car was hauled.

Realizing that Ruiz was not the person from whom she purchased the vehicle, Cynthia filed a fraud report with the Lodi Police Department on January 8, 2015. She attached to her certification a police report in which a detective detailed his investigation into the sale of the vehicle. In the report, the detective stated the day after Cynthia filed her report, Ruiz filed a report of identity theft, alleging that someone had represented himself as Ruiz when selling a vehicle to plaintiffs in Lodi in 2014. Through subpoenas, and other investigative techniques, the detective determined that the telephone number listed in the

advertisement for the car, and to which Eugene had sent text messages about the vehicle, was assigned to Veshi. In addition, the detective determined that Veshi was a tenant at the address in Lodi at which Eugene test drove and took delivery of the vehicle.

The detective reported that, at first, Veshi denied any knowledge of the transaction, or the vehicle. A few days later, Veshi appeared at police headquarters and admitted to having sold the car to plaintiffs, represented himself as Ruiz, and falsely signed the title as Ruiz. According to the report, Veshi offered to return the purchase price of the vehicle to Cynthia, who agreed that she would be satisfied with this result. Veshi, however, did not follow through on his promise.

In his certification in support of the motion for reconsideration, Eugene, for the first time, certified that Veshi unilaterally reduced the purchase price without negotiation. He submitted copies of text messages supporting this assertion. In addition, he certified for the first time that Veshi instructed him to give the money for the vehicle to a person he identified as his brother "A.J." at a rehabilitation center in Saddle Brook where "A.J." worked as a valet. After he turned the money over to "A.J.," Eugene picked up the vehicle at the Lodi residence where he conducted the test drive.

 A-1820-16T1

In their supporting brief, plaintiffs argued, among other things, that the trial court overlooked the covenant of good faith and fair dealing inherent in every contract, failed to find an implied warranty of fitness in the sales agreement, and mistakenly determined that the vehicle was sold "as is."

The trial court denied plaintiffs' motion. The court concluded that plaintiffs' certifications contained information not provided at the trial, despite having been available to plaintiffs at that time. In addition, the court held that plaintiffs identified no facts adduced at trial overlooked by the court, and cited no precedent warranting reconsideration.

This appeal followed.

II.

Following entry of default, a plaintiff seeking unliquidated damages ordinarily is required to establish those damages at a proof hearing. R. 4:43-2(b); Chakravarti v. Pegasus Consulting Grp., Inc., 393 N.J. Super. 203, 210 (App. Div. 2007). As we have long recognized, after a default, a plaintiff is entitled to "all of the damages" that can be "prove[d] by competent, relevant evidence." Heimbach v. Mueller, 229 N.J. Super. 17, 28 (App. Div. 1998). A judgment entered after a contested proof hearing is subject to limited review. See Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (explaining

that "[f]inal determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review.").  The question on appeal is whether there was substantial evidence supporting the trial court's findings of fact and conclusions of law.  Ibid.

"The [CFA] provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace."  Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 576 (2011).  The Act "is aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate."  Daaleman v. Eilzabethtown Gas Co., 77 N.J. 267, 270 (1978).  The statute is intended to "be applied broadly in order to accomplish its remedial purpose."  Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255, 264 (1997).  It is, therefore, liberally construed in favor of the consumer.  Cox v. Sears Roebuck & Co., 138 N.J. 2, 15 (1994).

Pursuant to the CFA, a plaintiff must establish three elements: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss."  Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009) (citations omitted).  A consumer who can prove these elements "is entitled to legal and/or equitable

11

relief, treble damages, and reasonable attorneys' fees." Lee v. Carter-Reed Co., LLC, 203 N.J. 496, 521 (2010) (citing N.J.S.A. 56:8-19).

Among the proscriptions in the Act are the

> use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing . . . concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . .
>
> [N.J.S.A. 56:8-2.]

The Act applies to casual sellers of automobiles. Real v. Radir Wheels, Inc., 198 N.J. 511 (2009).

Having reviewed the transcript of the proof hearing, we are constrained to conclude the trial court's findings of fact with respect to plaintiffs' CFA claim are not supported by substantial evidence. The trial court found that Veshi's advertisement stated that the vehicle "runs and drives without a problem," had "[n]o [c]heck engine light" and its "engine and transmission" was "100%." In addition, the court adopted Eugene's testimony that the check engine light illuminated, along with a number of other warning lights, and the car began to malfunction five minutes into his drive home from the sales transaction. Yet,

the court concluded that plaintiffs had not established that Veshi's representations in the advertisement were false or misleading.

The court's conclusion was, in part, based on the fact that the check engine light did not illuminate, and the car did not malfunction, during Eugene's short test drive of the vehicle. Although the performance of the car on the test drive is undisputed, it is also immaterial. It is the condition of the vehicle at the time of sale, and not at the time of the test drive, that is at issue here. Regardless of how the vehicle may have performed during Eugene's short drive prior to the purchase, plaintiffs' reliance on Veshi's representations in the advertisement took place at the time of the sale.

In addition, attributing the car's performance on the ride home to plaintiffs' bad luck, as opposed to Veshi's misrepresentations about its condition, ignores other evidence in the record the court accepted as established. According to the testimony adopted by the court, the car malfunctioned in multiple, significant ways five minutes after the purchase. The car's many deficiencies were documented just four days after the sale, when a mechanic noted that the check engine light was illuminated, along with several other warning lights, that a component was installed backwards and was the wrong size, and that the car was missing light bulbs and a timing cover.

A-1820-16T1

While it may be true that one can expect a vehicle to experience a mechanical issue with little or no warning, it strains credibility to conclude that a vehicle with a "100%" "engine and transmission" and "no engine light" would, five minutes after a sale, display an engine light and numerous other warning lights, have little power, and be unable to exceed thirty miles per hour. It was not, as the trial court concluded, equally likely as not that Veshi was unaware of the grave condition of the vehicle when he made the relevant statements in the advertisement. Veshi was limited in his ability to introduce evidence because of a default and elected not to cross-examine the witnesses. As a result, there is no evidence in the record with respect to Veshi's familiarity with the vehicle, or the steps he took to verify the accuracy of the representations he made in the advertisement. At the very least, it is impossible to conclude on this record that Veshi undertook a good faith inspection of the vehicle prior to representing that its engine was "100%" when a component part was the wrong size and installed backwards.

We understand the trial court's reluctance to consider the new evidence submitted in support of plaintiffs' motion for reconsideration. There are, however, several factors that warranted granting the motion for reconsideration: (1) the unusual procedural history of this matter, in which the proof hearing

proceeded despite Veshi's challenge to the entry of default against him; (2) counsel's focus on submitting evidence establishing damages rather than liability during the proof hearing; and (3) the strong evidence challenging Veshi's veracity submitted in support of plaintiffs' motion for reconsideration. We, therefore, reverse the trial court's judgment dismissing plaintiffs' CFA claims, and remand for a new hearing on those claims.

We also reverse the trial court's judgment dismissing plaintiffs' breach of contract claims. The trial court's legal analysis of these claims was based on its conclusion that the vehicle was sold to plaintiffs "as is." The court's characterization of the contract is not supported by its findings of fact. It is undisputed that Veshi made several representations about the condition and operability of the vehicle. His representations negate a conclusion that the car was sold "as is."

> Under New Jersey law, in order to state a claim for breach of express warranty, Plaintiffs must properly allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description.
>
> [In re Azek Bldg. Prods., Inc., 82 F. Supp. 3d 608, 614 (D.N.J. 2015) (quoting Snyder v. Farnam Cos., Inc., 792 F. Supp. 2d 712, 721 (D.N.J. 2011)).]

The court found that Veshi represented the vehicle "runs and drives without a problem," had a "100%" "engine and transmission" and no illuminated warning lights. In addition, Cynthia and Eugene testified that they read those representations and relied on them when deciding to purchase the vehicle. In the absence of cross-examination by Veshi, this testimony was undisputed. There is, therefore, a lack of substantial evidence supporting the trial court's conclusion that Veshi's warranties were not incorporated in the contract of sale.

Moreover, "every contract in New Jersey contains an implied covenant of good faith and fair dealing." Kalogeras v. 239 Broad Ave., LLC, 202 N.J. 349, 366 (2010) (quoting Sons of Thunder v. Borden, Inc., 148 N.J. 396, 420 (1997)). "That is, 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]'" Kalogeras, 202 N.J. at 366 (quoting Palisades Props., Inc. v. Brunetti, 148 N.J. 396, 420 (1997)). The trial court did not address this covenant, the breach of which is alleged in the complaint. The new hearing shall also address plaintiffs' breach of contract claims.

Plaintiffs' negligence claims were not addressed in detail by the trial court. It appears that the court concluded that plaintiffs' allegations that Veshi breached a duty to them were obviated by their breach of contract claims. We offer no

16

opinion with respect to plaintiffs' negligence claims, which shall be addressed by the trial court on remand. Finally, we note that should Veshi elect to move to vacate the default entered against him, the trial court should entertain his motion prior to holding the proof hearing.

Reversed and remanded for proceedings consistent with this opinion. Because the judge who heard this matter has already conscientiously engaged in weighing the evidence and rendered an opinion on the credibility of the parties, the hearing should take place before a different judge. See N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 617 (1986). We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1820-16T1