**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2614-19

IN THE MATTER OF
COREY CORBO,
UNION CITY POLICE
DEPARTMENT.

_____

Argued January 18, 2022 – Decided January 26, 2022

Before Judges Fasciale and Firko.

On appeal from the New Jersey Civil Service Commission, Docket No. 2015-2471.

Zinovia H. Stone argued the cause for appellant Corey Corbo (Caruso Smith Picini, PC, attorneys; Timothy R. Smith, of counsel; Steven J. Kaflowitz and Zinovia H. Stone, on the briefs).

Michael J. Dee argued the cause for respondent Union City Police Department (O'Toole Scrivo, LLC, attorneys; Andrew Gimigliano and Nicole M. DeMuro, of counsel and on the brief; Joseph A. Natale, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent New Jersey Civil Service Commission (Debra A. Allen, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Corey Corbo appeals from a January 30, 2020 final agency decision entered on remand by the Civil Service Commission (CSC).[1] On remand, an administrative law judge (ALJ) conducted a hearing at which the Union City Police Department (City) produced testimony from three Raritan Bay Medical Center (Raritan Bay) employees who confirmed that Corbo tested positive for cocaine. After the remand proceeding, the CSC considered the entire record, including new findings by the ALJ, hospital records, and testimony; it conducted a de novo review; and then removed Corbo from employment as a law enforcement employee. There exists substantial credible evidence in the remand record to support the CSC decision, which is not arbitrary, capricious, or unreasonable. We therefore affirm.

On appeal, Corbo argues:

POINT I

THE [CSC] ERRED IN ITS DECISION TO ADOPT . . . THE [ALJ'S] DECISION RECOMMENDING CORBO'S TERMINATION.

---

[1] We initially expressed concerns about the basis of an earlier determination to remove Corbo from his employment. See In re Corbo, No. A-5610-15T3 (App. Div. Mar. 1, 2018) (slip op. at 10). The Court then remanded to the Office of Administrative Law (OAL) for further proceedings. See In re Corbo, 238 N.J. 246, 255 (2019).

A. Introduction.

B. The City Has Failed To Establish That The Lab Reports Were Admissible As Business Records Because Of Its Three Witnesses, Two Did Not Work At Raritan Bay Medical Center In June[] 2014, The Third Witness Did Not Recall The Events In Issue, And All Three Witnesses Only Testified That They Assumed That The Records Were Kept In The Ordinary Course Of Business Because There Were Procedures In Place To Do So.

C. The City Has Not Presented Any Evidence Whatsoever To Show That Its Testing Methodology Was Reliable And Has Failed To Produce Any Expert Or Medically Qualified Individual To Confirm That The Testing Used Was Sufficient To Confirm That Corbo Had Ingested Cocaine.

D. Even Assuming, Arguendo, That The Lab Reports Were Admissible, Given That The Testing Used Was Unreliable, And Since The [ALJ] Based Her Affirmation [O]f Corbo's Removal On Her Prior Decision Which Rested On Garcia's Inadmissible Statements, The City Has Not Met Its Burden Of Proof, And The [ALJ's] Recommendation Was In Error.

POINT II

UNDER THE ATTORNEY GENERAL'S BINDING DRUG TESTING POLICY, THIS MATTER SHOULD

A-2614-19

HAVE BEEN DISMISSED BY THE CITY ONCE GARCIA'S HEARSAY WAS RULED INADMISSIBLE.

POINT III

THE EVIDENTIARY FINDINGS OF THIS COURT HAVE NOT BEEN DISTURBED BY THE NEW JERSEY SUPREME COURT AND, THEREFORE, THIS COURT'S DECISION TO EXCLUDE GARCIA'S STATEMENTS STANDS AND THESE STATEMENTS SHOULD NOT HAVE BEEN CONSIDERED BY THE [ALJ].

I.

In Point I, Corbo essentially concedes that on June 11, 2014, emergency medical personnel and police were dispatched to his home, he needed medical attention, and was taken to Raritan Bay for treatment where he was administered a urine drug screen, which revealed he tested positive for cocaine. Rather than arguing he did not ingest cocaine, Corbo challenges the evidential basis for admitting into evidence medical records, primarily contending that the records are inadmissible hearsay. Of course, we review evidentiary rulings for abuse of discretion. Hisenaj v. Kuehner, 194 N.J. 6, 12 (2008). We see no error, let alone plain error.

Corbo's medical problem warranted immediate attention. When he arrived at the hospital, medical personnel evaluated the situation and, in part

based on what they were told, tested Corbo's urine. After completing the test, they learned that Corbo had cocaine in his system. On remand, the City proved he ingested cocaine by producing testimony from three Raritan Bay witnesses. Relying on their testimony, the ALJ admitted into evidence R-6 (the medical records) and R-7 (the lab report) under N.J.R.E. 803(c)(6) (the business records exception).

> A statement contained in a writing or other record of acts, events, conditions, and, subject to Rule 808, opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make such writing or other record.
>
> [N.J.R.E. 803(c)(6).]

"This exception does not apply if the sources of information or the method, purpose or circumstances of preparation indicate that it is not trustworthy." Ibid. On remand, the qualified witnesses satisfied the requirements of the rule, including establishing trustworthiness.

Rachel Clarke is responsible for overseeing the accuracy and security of medical records at Raritan Bay. Clarke testified that while a patient is at a Raritan Bay hospital, the records are stored electronically in the lab system software for a particular department. Several times a day or at the end of each

A-2614-19

day, the individual department records are batched to the hospital's main electronic records system. Clarke confirmed that providers enter clinical information and documentation as soon as the provider interacts with a patient. Clarke testified that R-6 matched Corbo's then current medical records in Raritan Bay's record system. Clarke stated that based on her twenty years of experience working in this hospital system, it was the regular course of business at Raritan Bay for medical information to be input at or near the time of whatever is being done at the hospital.

June Mahoney, the Administrative Director of Laboratories at Raritan Bay, identified R-7 as a printed copy of test results from the laboratory information system. Mahoney testified that reports like R-7 are created after the completion of testing and that they are generated in the laboratory's ordinary course of business. Mahoney testified that the results of a laboratory test "are analyzed on the [testing] instrument, the instrument electronically feeds those results to the laboratory information system, [then] the laboratory information sends it to the medical record." Mahoney stated that in the laboratory records information system, Achala Parikh is displayed as the technologist who ran Corbo's urine immunoassay test. Mahoney confirmed that page one of R-7 is a

true and complete copy of the laboratory records maintained at Raritan Bay for Corbo.

Achala Parikh is a laboratory technician at Raritan Bay and has been since 1990. Parikh testified that she was working in the Raritan Bay laboratory in June 2014. Describing the process of obtaining and testing a urine sample, Parikh testified that the medical personnel send the specimen from the Emergency Room through a pneumatic system to a data processor. The data processor opens the tube, scans it with a time stamp, and then gives it to the specific laboratory department.

Parikh testified that a lab technician on the morning shift performs quality control and calibration of the testing instrument daily. For the urine immunoassay test, the technician places the tubed specimen into the Cobas testing instrument and hits the "start" button. Testing takes fifteen minutes, and when complete, the Cobas testing results appear on the technician's computer screen through the electronic records system. The technician then confirms the patient's identification information with the results.

Parikh testified that she never physically inputs any information into the Cobas instrument or in the electronic system because it is automatically generated. Parikh stated that she had personally never had an instance where

the results on the Cobas instrument's screen were different than the results generated in the electronic system.

The ALJ did not abuse her discretion in ruling the lab reports and test results were admissible under the business records exception. The witnesses' foundational testimony established the lab reports and hospital records met the requisite conditions. The lab reports were made by an employee, Parikh, during her regular duties as a lab technician. The lab reports were generated contemporaneously and automatically through the Cobas instrument testing procedure. The witnesses testified that it was Raritan Bay's regular practice to generate and maintain lab reports in its electronic system. The method of generating and maintaining the reports indicate that the lab reports are trustworthy. Parikh specifically testified that she has never deviated from the procedures of generation and storage to which she testified and has never known a situation where the results in the electronic system were different than the results of the testing by the Cobas instrument.

Contrary to Corbo's contention, the City was not required to produce expert testimony to establish the reliability of his drug screen, which was a simple diagnostic test. "There is no reason to believe that a computerized business record is not trustworthy unless the opposing party comes forward with

8

some evidence to question its reliability." Hahnemann Univ. Hosp. v. Dudnick, 292 N.J. Super. 11, 18 (App. Div. 1996).

We acknowledge that in an earlier hearing, Corbo called Dr. Richard Saferstein as an expert in forensic toxicology, and he testified that the immunoassay test used is "presumptive at best" and should generally require a confirmation test, which was not performed here. Dr. Saferstein opined that there is a likelihood that the test could produce a false positive result for cocaine. But it is uncontested that Dr. Saferstein testified that he had "no problems with the reliability of the immunoassay test." His view, however, was that these tests "lack a high degree of specificity."

In our view, the remand record demonstrates that the immunoassay test administered to Corbo is reliable. Corbo's urine tested positive for cocaine metabolite benzolyecgonine, opiates, and benzodiazepines. Dr. Saferstein conceded that the medications prescribed to Corbo that he could have possibly ingested prior to the test would not have created a false positive for cocaine. Dr. Saferstein's testimony did not overcome the presumptive reliability of the urine immunoassay test, and the Raritan Bay records were properly admitted under the business records exception.

 A-2614-19

We reject Corbo's conclusory argument that Clarke and Mahoney were not qualified as foundation witnesses because they were not employed at Raritan Bay in June 2014. "[U]nder both the New Jersey and federal rules of evidence, the foundation witness generally is not required to have personal knowledge of the facts contained in the record." Id. at 17-18. The foundation witness—like here—is competent if she "(1) can demonstrate that the computer record is what the proponent claims and (2) is sufficiently familiar with the record system used and (3) can establish that it was the regular practice of the business to make the record." Id. at 18.

The three witnesses were qualified to testify as to the hospital records. They were familiar with the Raritan Bay records system and the hospital's regular practice of generating and maintaining records. Furthermore, Parikh personally ran Corbo's test through the Cobas testing instrument. The City established the hospital records met the requirements of the business record exception and their trustworthiness. Corbo had the burden of demonstrating the test results were not reliable and failed to do so. Therefore, the hospital records were properly admitted.

II.

Our role in reviewing a final agency decision is limited. All Stars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). We give deference to a final agency decision, "unless there is a clear showing that it is arbitrary, capricious, unreasonable, or that it lacks fair support in the record." In re Herrmann, 192 N.J. 19, 27-28 (2007). The party challenging the administrative action bears the burden of making that showing. Lavezzi v. State, 219 N.J. 163, 171 (2014).

Here, the CSC conducted a de novo review of the entire record and adopted the ALJ's findings of fact and conclusions. The ALJ found the three Raritan Bay witnesses credible. The witnesses testified as to the generation and maintenance of the records, as well as the procedure for conducting the urine immunoassay test. Corbo's only contradicting witness, Dr. Saferstein, testified about the lack of specificity in the test and the potential for false positives, but he did not attack the reliability of the test. The ALJ found there was no evidence Corbo's test results were unreliable when generated and recorded in June 2014.

There was nothing arbitrary, capricious, or unreasonable about the CSC's final decision to remove Corbo from employment. Corbo did not present any evidence to contradict that the urine immunoassay test was not made

contemporaneously or that there was an issue with the transfer of information in Raritan Bay's electronic records system. The hospital records reliably indicate a positive result for cocaine. We conclude that substantial, credible evidence supported the CSC's final decision.

III.

In Point III, Corbo argues the ALJ erred in relying on the prior record, specifically purported hearsay statements. In rendering her remand decision, the ALJ included the statements as background from her prior record in her initial decision. In performing its independent analysis, the CSC found that the statements, particularly those by Corbo's then girlfriend, were admissible as hearsay under the residuum rule.

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." N.J.R.E. 801(c). Hearsay statements are inadmissible unless they fall within an exception. N.J.R.E. 802. The residuum rule permits an ALJ to admit otherwise inadmissible hearsay. N.J.A.C. 1:1-15.5(a). Under the rule, "[h]earsay evidence which is admitted shall be accorded whatever weight the judge deems appropriate taking into account the nature, character and scope of the evidence,

the circumstances of its creation and production, and generally, its reliability." Ibid. Although a fact may not be based on hearsay alone, "[h]earsay may be employed to corroborate competent proof, or competent proof may be supported or given added probative force by hearsay testimony." Weston v. State, 60 N.J. 36, 51 (1972).

Officer Jamey DiGrazio, the responding officer to Corbo's medical emergency, testified at the first hearing that he spoke to Corbo's then girlfriend Jessica Garcia while paramedics treated Corbo. DiGrazio testified he told Garcia that Corbo's "health was failing" and asked her if she had any information about what Corbo ingested so that he could "forward it to the paramedics so they could provide better care." What she said in part prompted the urine testing.

DiGrazio testified that Garcia told him Corbo "did a bump about five days ago." Based on his training and experience, DiGrazio understood Garcia's statement to mean that Corbo had ingested cocaine. In her first initial decision, the ALJ deemed Garcia's statement to be admissible under several hearsay exceptions. On her specific earlier evidentiary reasoning, we disagreed and reversed. The Court remanded the matter to the OAL for a determination of whether the hospital records were admissible as business records. The remand

did not limit the admissibility of Garcia's statements under any other applicable basis.

The CSC found that Garcia's statement "is now admissible as hearsay supported by a residuum of competent evidence, namely the hospital records which revealed that a cocaine metabolite was present in [Corbo's] urine." The hospital records and lab report, which reflect the positive test results for cocaine conducted at Raritan Bay, are competent proof that Corbo ingested cocaine. Garcia's statement to DiGrazio that Corbo did a "bump" of cocaine five days earlier corroborates the positive test results. Once the City successfully introduced the Raritan Bay records under the business records exception, the ALJ did not err in considering Garcia's statement under the residuum rule. That is especially true for one more reason.

Although the City has not raised this argument below, Garcia's statement may also be admissible if not offered for its truth. A statement not offered for its truth is "not hearsay and no exception to the hearsay rule is required to introduce that evidence at trial." State v. Long, 173 N.J. 138, 152 (2002). An out-of-court statement may be admissible when offered not for its truthfulness, but to show the statement's effect on the listener. See Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 376 (2007). A statement may also be admissible when

offered to explain a party's actions. See Jugan v. Pollen, 253 N.J. Super. 123, 136-37 (App. Div. 1992).

Garcia's statement can be used to demonstrate its effect on the listener, DiGrazio. After DiGrazio heard Garcia's statement, he conveyed that information to the paramedics. The statement could also be used for its effect on medical personnel at Raritan Bay, and to explain why Raritan Bay conducted a urine immunoassay test. Although neither party nor the ALJ considered Garcia's statement for this purpose, it may admissible if not used to prove that Corbo ingested cocaine. While at the hospital, the medical personnel determined, based in part on what Garcia had said, that they would test Corbo's urine.

Finally, we determine that Corbo's argument that the Attorney General's drug testing policy for tests conducted at the State Toxicology Laboratory prevents the City from disciplining Corbo is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2614-19